(247 P.3d 1064)
No. 101,690

VIA CHRISTI REGIONAL MEDICAL CENTER, INC., *Appellee*, v. IVAN M. REED, *Appellant*, and PATTERSON GOTT & BURK, L.C., as successor entity of PATTERSON GOTT & GRAYBILL, L.C., *Appellee*.

Opinion filed February 18, 2011.

*Jacob S. Graybill* and *N. Russell Hazlewood*, of Graybill & Hazlewood L.L.C., of Wichita, for appellant Ivan M. Reed.

*Jay F. Fowler, Holly A. Dyer*, and *James D. Oliver*, of Foulston Siefkin L.L.P., of Wichita, for appellee Via Christi Regional Medical Center, Inc.

Before LEBEN, P.J., PIERRON, J., and LARSON, S.J.

LEBEN, J.: Ivan Reed's car collided with a Union Pacific train, and he received treatment for his traumatic injuries at Via Christi Regional Medical Center. Via Christi filed a hospital lien for the more than $80,000 in services it provided to Reed, and then it filed

an action to enforce the lien on the $540,000 in proceeds that Reed eventually received from a personal injury settlement with Union Pacific. Reed counterclaimed and alleged that Via Christi's bill charges were deceptive and unconscionable in violation of the Kansas Consumer Protection Act (KCPA). Via Christi filed a motion for summary judgment on Reed's counterclaims, and Reed filed a partial motion for summary judgment that sought to declare Via Christi's lien invalid because Via Christi didn't comply with all of the statutory requirements for an effective lien. The district court enforced Via Christi's entire lien, awarded the hospital the accrued interest on the lien amount, and dismissed Reed's KCPA claims. Reed appeals.

The district court properly enforced Via Christi's lien because the public purpose behind hospital liens—to encourage hospitals to treat patients regardless of the patients' ability to pay—allows less-than-strict compliance with the statutory lien creation requirements. But the district court improperly enforced the entire lien amount: The record does not show that the district court considered any facts or evidence that would support its conclusion that enforcing Via Christi's entire lien amount was an equitable distribution of Reed's settlement proceeds, especially when Reed recovered less than a quarter of his requested damages from Union Pacific.

Finally, the district court properly dismissed Reed's KCPA claims. Via Christi's action to enforce its lien requires the court to enter an equitable or fair order, so Reed can have no claim for unconscionability, which by definition means unfairness. Via Christi was legally prohibited from collecting an inequitable or unfair amount. Nor are his claims of deception successful. He cannot show that he was harmed by anything Via Christi did because Via Christi never sought personal judgment against him on the bills.

We therefore affirm the district court's decision to enforce Via Christi's lien and dismiss Reed's KCPA claims, but we vacate the lien amount awarded and remand the case for the district court to hold a hearing and make an appropriate finding on what portion of the lien constitutes an equitable distribution of Reed's settlement proceeds.

### FACTUAL AND PROCEDURAL BACKGROUND

Ivan Reed sustained life-threatening injuries when his car collided with a Union Pacific Railroad train on November 18, 2001. He was initially taken to a hospital in Hutchinson, Kansas, but was quickly transferred to Via Christi Regional Medical Center in Wichita so that he could receive the trauma care he needed. Reed agrees that he received life-saving treatment at Via Christi.

The next day, Reed's sister signed a form agreement in which the patient agreed to pay any medical insurance benefits he or she received to Via Christi. Although the agreement contained a promise by the patient to pay for the services Via Christi provided, Reed's sister had crossed this paragraph out and written "Do not agree to pay" next to it. Reed was hospitalized for 14 days and underwent several surgeries during that time. Reed did not have health insurance, and he didn't qualify for Medicare. Reed did receive MediKan benefits but only for about $2,000 for his last 2 days in the hospital. Reed did not pay the medical bills.

Almost a year after he was discharged from the hospital, on November 4, 2002, Via Christi filed a hospital lien in the amount of $84,774 for the charges it incurred while treating Reed. Via Christi later agreed to reduce its lien amount to $83,366 so that it wasn't seeking those charges that had been reimbursed by MediKan. Via Christi named Reed's automobile-insurance company as the alleged liable third party and served the lien on Reed.

Because of his injuries, Reed was disabled and unable to work. On June 2, 2003, he filed a personal-injury tort claim against Union Pacific. Reed and Union Pacific began negotiating a settlement in July 2004; Reed notified Via Christi of the settlement negotiations. Via Christi did not amend its lien statement or file a new hospital lien naming Union Pacific as the liable third-party; nor did Via Christi serve Union Pacific with the lien statement as is required by statute. Via Christi demanded its lien amount from the settlement proceeds; Reed replied that Via Christi's charges were unreasonable.

Through numerous letters exchanged between the parties' attorneys, Via Christi and Reed agreed that Reed's attorney would

take Via Christi's reduced lien amount from the settlement proceeds and place it in the firm's trust account while the two parties worked out their dispute over the charges' reasonableness. No formal, written trust agreement was executed.

Reed and Union Pacific settled for $540,000 in August 2004. Union Pacific was aware of Via Christi's charges and of its claim. In the written settlement agreement between Reed and Union Pacific, Reed and his attorneys represented to Union Pacific that there were no outstanding liens "other than the medical lien of Via Christi Health System" and that of the automobile-insurance carrier. Reed's attorney disbursed all of the Union Pacific settlement proceeds except Via Christi's claimed lien amount, which was transferred from the firm's trust account into an interest-bearing bank account. Reed offered Via Christi a $21,000 check to settle the matter; Via Christi returned the check and reasserted its right to the proceeds held in trust. Reed countered with additional complaints that Via Christi's charges were unreasonable and assertions that the lien was invalid.

In October 2004, Via Christi filed an action against Reed and his attorneys to enforce its lien and compel distribution of the settlement proceeds. Reed's answer denied any responsibility to distribute the proceeds, asserted that Via Christi's lien was invalid, and made a counterclaim that Via Christi's charges were deceptive and unconscionable in violation of the Kansas Consumer Protection Act.

Both parties moved for summary judgment. First, Via Christi moved for summary judgment in its favor on Reed's KCPA counterclaims. Reed responded by moving for partial summary judgment on the grounds that Via Christi's lien was ineffective and that the hospital had no right to the settlement proceeds held in trust. After hearing oral argument from both parties, the district court: (1) held that Via Christi's lien was effective against Reed and denied Reed's motion; (2) ruled that Via Christi's use of the health-care industry's universal method of billing was valid as a matter of law and granted Via Christi's motion on Reed's KCPA counterclaims; and (3) entered an order requiring Reed to disburse to Via Christi the full amount of its lien. Reed appeals all three rulings.

When the material facts aren't in dispute, this court reviews the grant of summary judgment without any required deference to the district court's decision. *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 39, 169 P.3d 1052 (2007). Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *Miller v. Westport Ins. Corp.*, 288 Kan. 27, 32, 200 P.3d 419 (2009).

## ANALYSIS

I. *Although Via Christi Did Not Strictly Comply with the Kansas Hospital-Lien Statutes, the Statutes' Purpose Is Served by a Lenient Construction, and Such a Construction Gives Via Christi an Enforceable Lien in This Case.*

When a hospital provides emergency medical services to an injured patient and that patient collects judgment or settlement proceeds from the third party held liable for the injury, the hospital has a lien on the patient's proceeds for the reasonable and necessary charges the hospital incurred when treating the patient. K.S.A. 65-406(a), (b). K.S.A. 65-407 lists the requirements to have an effective lien, and Via Christi admits that it did not comply with two of the statute's requirements: naming Union Pacific as the liable third party in the lien and sending Union Pacific notice of the lien by certified or registered mail.

Since liens are created by statute, Kansas courts generally require strict compliance with the statutes that create an enforceable lien. *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 230, 73 P.3d 753 (2003). Then, once a lien is properly created, the remaining lien statutes are liberally construed in the claimant's favor. *Alliance Steel, Inc. v. Piland*, 39 Kan. App. 2d 972, 976, 187 P.3d 111 (2008), *rev. denied* 287 Kan. 765 (2009). These rules have generally been applied to Kansas' other statutory liens, especially mechanic's liens, but have not been explicitly applied to hospital liens. See generally Randol, *Recent Kansas Case Emphasizes Importance of Strict Compliance with Mechanic's Lien Statutes; Failure to Verify Lien*

*Claimant's Address Renders Lien Invalid*, 77 J.K.B.A. 14 (Sept. 2008).

But the purpose of the hospital-lien statute is markedly different than the purpose of other lien statutes: it serves a *public* purpose of assuring that needed medical treatment is readily available to those who have been injured. Based on this significant difference in the statutory basis for a hospital lien, we conclude that the provisions creating hospital liens, K.S.A. 65-406 and K.S.A. 65-407, should be liberally construed to carry out that public purpose.

The difference between mechanics' liens that protect contractors and hospital liens that are designed to protect both the public and hospitals (themselves often not-for-profit institutions) has long been recognized. The Kansas mechanic's lien laws protect private interests. *Mutual Savings Ass'n v. Res/Com Properties*, 32 Kan. App. 2d 48, 52, 79 P.3d 184 (2003), *rev. denied* 277 Kan. 924 (2004) (mechanics' liens give contractors and subcontractors security for the labor they perform). Hospital liens, on the other hand, serve a public purpose: they encourage hospitals to treat emergency patients without delaying treatment to first consider if the patients are able to pay. See *Board of Trustees v. American Resources Ins.*, 5 So. 3d 521, 528 (Ala. 2008); *Buchanan v. Beirne Lumber Company*, 197 Ark. 635, 639, 124 S.W.2d 813 (1939); *In re Estate of Cooper*, 125 Ill.2d 363, 368-69, 532 N.E.2d 236 (1988). Kansas enacted its hospital-lien statute to fulfill this purpose in 1939, at the end of the Great Depression, and the provisions have remained substantially the same for the past 6 decades. See L. 1939, ch. 235, secs. 1-3; L. 1997, ch. 21, sec. 1. A liberal construction of the Kansas hospital-lien statutes will ensure that the statutes' longstanding public purpose is realized.

Some form of hospital-lien statute exists in 42 states, and most of the statutes were first adopted in the Great Depression. At that time, hospitals were financially burdened by treating many patients who had no money to pay for treatment. Saar, Note, *Blindsided (Again): Iowa Hospitals' Abuse of the Hospital Lien Statute and What Has Been Done to Correct It*, 56 Drake L. Rev. 463, 467-68 (2008); see *Baylor U. Med. Center v. Travelers Ins. Co.*, 587 S.W.2d 501, 504 (Tex. Civ. App. 1979). The hospital-lien statutes

were designed with a dual purpose: to ensure that injured patients would be quickly treated and to protect health-care providers financially so that they could continue to provide care, especially trauma care. *Bergan Mercy Health System v. Haven*, 620 N.W.2d 339, 346-47 (Neb. 2000). Those public purposes are no less important today than when the statutes were adopted. Kansans depend upon their community hospitals both for urgent care and the general provision of medical care. As the Illinois Supreme Court has noted, hospital-lien statutes are designed to promote the public good:

"Statutory lien provisions such as the Hospital Lien Act are enacted to promote the health, safety, comfort, or well-being of the community. [Citation omitted.] Many of our sister States have similar hospital lien statutes which are designed to lessen the financial burden that hospitals face in treating nonpaying accident victims. [Citation omitted.] In Illinois, the Hospital Lien Act allows hospitals to assist persons without regard to ability to pay . . . . Thus, utilizing these liens to protect a hospital's interests promotes health care for the poor of this State." *In re Estate of Cooper*, 125 Ill. 2d at 368-69.

Based on this strong public purpose, "the clear weight of authority" in interpreting these statutes is that "substantial, rather than strict, compliance satisfies the legislative intent." *In re Dueis*, 130 B.R. 83, 84-85 (Bankr. D. N.D. 1991) (citing cases).

Kansas law fits squarely within this line of authority. Our Supreme Court has long held that " '[i]t is fundamental that where a statute is designed to protect the public, the language must be construed in light of the legislative intent and purpose and is entitled to a broad interpretation so that its public purpose may be fully carried out.' " *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger*, 276 Kan. 232, 248, 75 P.3d 226 (2003) (quoting *Johnson v. Killion*, 178 Kan. 154, 158-59, 283 P.2d 433 [1955]). Similarly, we appropriately consider that the hospital-lien statute was enacted against the backdrop of the Great Depression and that it was clearly intended to serve the public purposes we have noted. See *Jones v. Kansas State University*, 279 Kan. 128, 145, 106 P.3d 10 (2005) (courts may look to the historical background of the statute, the purpose to be accomplished, and the effect that various constructions of it might have in light of that purpose).

Even when giving a statute a liberal construction to carry out its purposes, however, a third party should not unknowingly be subjected to liability. Under K.S.A. 65-408, the hospital can hold a third party liable for the lien amount if the third party distributes the proceeds to the patient without satisfying the hospital's lien. The third-party notice requirement in K.S.A. 65-406 ensures that the third party doesn't incur liability for unknowingly failing to satisfy the lien. But where, as here, the third party knows about the claim even though it wasn't served the lien notice in strict compliance with the statute, the notice requirement's purpose is met, and the statute has been sufficiently complied with so that strict compliance with the service method set out in K.S.A. 65-407 should not be required before the lien may be enforced. See *Board of Trustees*, 5 So. 3d at 531. Our Supreme Court has allowed substantial, rather than strict, compliance with service or notice provisions in other situations so as to carry out a statute's purpose when that purpose is for the public good. *E.g., Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 782-83, 793-95, 799-800 (1998) (substantial compliance with statutes regulating election procedures is sufficient when the election has been held and the voters have already cast ballots); *First Nat'l Bank & Tr. v. Miami Co. Co-op Ass'n*, 257 Kan. 989, Syl. ¶ 5, 999-1002, 897 P.2d 144 (1995) (notice of security interest to buyers of agricultural food products need only be in substantial compliance with federal statutory requirements in light of Congressional purpose to protect buyers of farm products from bank liens only when the buyer wasn't aware of the security interest); *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, Syl. ¶ 2, 755 P.2d 1337 (1988) (substantial compliance with notice provision of Kansas Implied Consent Law, which protects Kansans from drunk drivers, was sufficient). For a notice to be in substantial compliance with a statutory notice provision, it must sufficiently "advise the party to whom it is directed of the essentials of the statute." *Barnhart*, 243 Kan. 209, Syl. ¶ 2.

In this case, Union Pacific had actual knowledge of Via Christi's lien. The lien was listed as a possible encumbrance on the settlement proceeds in the settlement agreement between Reed and Union Pacific, and Via Christi expressly released Union Pacific

from liability for paying the lien. In addition, through the letters exchanged between the attorneys, Reed's attorney agreed to set aside funds that would cover Via Christi's claim until Via Christi's right to be reimbursed was resolved. In these circumstances, requiring Via Christi to comply strictly with K.S.A. 65-407's formal third-party notice requirements when Union Pacific knew about the lien and Reed's attorney agreed to put the funds in trust until the dispute was resolved would be an unnecessary formality that would only frustrate the statute's public purpose. We will therefore affirm the enforcement of Via Christi's lien against the settlement proceeds held in trust.

We note that other courts, including the Kansas federal bankruptcy court, have enforced hospital liens that didn't strictly comply with the third-party notice requirements. See *Baker v. Iowa Methodist Medical Center*, 542 N.W.2d 847, 849 (Iowa 1996); *In re Brown*, 2007 WL 2029498, at *9-10 (Bankr. D. Kan. 2007) (unpublished opinion). In interpreting hospital-lien statutes almost identical to ours, the Iowa Supreme Court in *Baker* found that the hospital's failure to comply with the third-party notice requirement didn't impact the hospital's ability to enforce the lien against the patient. *Baker*, 542 N.W.2d at 849. Following *Baker*, the *Brown* court found that the hospital had to comply with the third-party notice requirement of K.S.A. 65-407 only if it was seeking to enforce the lien against the third party under K.S.A. 65-408; the hospital's failure to notify the third party didn't impact the hospital's ability to enforce the lien against the patient under K.S.A. 60-406. *Brown*, 2007 WL 2029498, at *9-10.

We recognize that K.S.A. 65-407 provides that "[n]o such lien shall be effective" unless the notice provisions set out there, including service by certified or registered mail of the lien statement to the third party that may be liable, are complied with. In our view, that statute was substantially complied with given the communications that took place here between Union Pacific, Via Christi, and Reed such that requiring strict compliance with requirements that a copy of the lien statement must have been sent to Union Pacific by certified or registered mail would clearly be contrary to the statute's purpose. Such an interpretation would

also be contrary to how most courts have gone about interpreting and applying hospital-lien statutes.

Part of Reed's argument before us was that he cannot be held liable under the lien statute because he was not personally liable to Via Christi (based on the statement his sister wrote on the form agreement to pay for his medical expenses). But contrary to Reed's assertions, the Kansas hospital-lien statutes do not require an underlying debt before the hospital is entitled to its lien, and nothing in the form agreement his sister signed purported to waive the hospital's rights under the hospital-lien statutes.

K.S.A. 65-408 provides that anyone who makes "any payment to such [injured] patient . . . as compensation for the injury sustained" is liable to the hospital under the lien. Whether or not Reed was obligated to pay his medical expenses, "any payment" made to him "as compensation for the injury sustained" would be subject to the lien, and that language surely covers what Union Pacific paid Reed. This makes sense under the statute's purpose, which seeks to ensure that hospitals will treat those who are injured and that hospitals will not suffer unnecessarily heavy financial burdens by doing so. Moreover, an action to enforce a hospital lien generally is independent of common-law contract theories that require an underlying contract and debt before liability attaches. See *In re Estate of Enloe*, 109 Ill. App. 3d 1089, 1090-91, 441 N.E.2d 868 (1982). Finally, as we discuss in the next section, the enforcement of the hospital's lien does not necessarily mean that the hospital recovers *all* of the money in its lien—even if the patient has recovered more than that amount. Rather, the hospital is limited in most cases to an equitable share of the patient's overall recovery.

II. *Reed's KCPA Claims Contesting Via Christi's Charges Were Properly Dismissed Because Via Christi's Action to Enforce the Lien Is Statutorily Limited to Only the Reasonable and Necessary Charges that Are an Equitable Distribution of the Settlement Proceeds.*

The Kansas Consumer Protection Act prohibits entities from engaging in unconscionable or deceptive acts and practices with consumers. K.S.A. 50-627(a); K.S.A. 50-626(a). At the time Via

Christi's lien arose and Union Pacific paid its settlement to Reed, the KCPA applied when physicians provided medical care and treatment to patients. *Williamson v. Amrani*, 283 Kan. 227, 232, 152 P.3d 60 (2007), *superseded by statute on other grounds Kelly v. VinZant*, 287 Kan. 509, 520-21, 197 P.3d 803 (2008).

Reed admits that all of his KCPA claims relate to the charges on Via Christi's bills. Because his claims relate only to what he was charged, we find that he has no viable claim under the KCPA.

### Unconscionable-Act Claims

Via Christi sought to enforce its hospital lien on the settlement proceeds; it did not seek judgment against Reed on the bills. Kansas' hospital-lien laws have built-in provisions that preclude the hospital's satisfaction of its lien from being unconscionable to the patient.

First, the hospital must limit its charges to what's reasonable and necessary. K.S.A. 65-406(b). Then, the court may only enforce a lien greater than $5,000 in an amount that constitutes an equitable distribution of the settlement proceeds. K.S.A. 65-406(c). Reasonableness and equity both mean fair; unconscionable means extreme unfairness. Black's Law Dictionary 619, 1379, 1663 (9th ed. 2009). By virtue of these opposite definitions, a judge enforcing a reasonable and equitable remedy cannot create an inequitable or unconscionable outcome. Therefore, because Via Christi's lien must be limited to the reasonable and necessary charges that are an equitable distribution of the settlement proceeds, enforcing the lien cannot violate the KCPA's prohibition on unconscionable practices.

### Deceptive-Act Claims

The nature of Via Christi's lien action doesn't automatically foreclose claims for deceptive-act KCPA violations. Deceptive acts include such things as making false statements or concealing material facts in a transaction, and in the context of liens, falsely claiming to have a lien on another's property. See *Swanson v. Public Storage, Inc.*, 2001 WL 584457, at *6 (D. Kan. 2001) (unpublished opinion). Reed has asserted that Via Christi acted deceptively when it encouraged his sister to sign the release agreement for him, charged

him exorbitantly for the services, and asserted an unenforceable lien. See K.S.A. 50-626(b). But as previously discussed, Via Christi's lien is enforceable, and Reed's other deceptive-act claims fail because he cannot show that he was aggrieved in order to have a private right of action under the Act.

The Kansas Attorney General has the responsibility to enforce the KCPA and bring actions against those that violate the Act. K.S.A. 50-628(a); K.S.A. 50-632(a), (b). But for a consumer to have a private remedy under the KCPA, the violation must have "aggrieved" the consumer, *i.e.*, the deceptive acts adversely affected the consumer's legal rights. K.S.A. 50-634(a), (b); *Finstad v. Washburn University,* 252 Kan. 465, Syl. ¶ 3, 845 P.2d 685 (1993); Black's Law Dictionary 77 (9th ed. 2009). Here, since Via Christi was not seeking judgment against Reed personally on the bill amounts, Reed's legal rights—monetary or otherwise—were not adversely affected. Via Christi attempted to enforce a valid lien, and that enforcement, which Via Christi was entitled to pursue, did not aggrieve Reed.

Reed has thus failed to show that Via Christi's enforcement of its lien was unconscionable or deceptive.

II. *The Record Is Inadequate to Support the District Court's Conclusory Finding that Via Christi's Entire Lien Amount Was Reasonable, Necessary, and an Equitable Distribution of the Settlement Proceeds.*

Although the district court was correct in enforcing Via Christi's lien, it improperly enforced the entire amount of the lien.

Because Via Christi's lien in this case exceeds $5,000, the district court was required to enforce the lien only to an amount that the court found to be an equitable distribution of the proceeds. See K.S.A. 65-406(c).

The district court's original opinion made no finding that enforcing the entire $83,365.64 lien was an equitable distribution of Reed's $540,000 settlement proceeds. Reed objected to this failure, and a hearing was held on the objection. At the hearing, Via Christi insisted that the court had sufficient evidence from the parties' summary judgment motions, responses, replies, and at-

tached exhibits to decide the equities of the matter. The district court took the issue under advisement and then issued a one-page opinion explaining how its original ruling had included an equitable-distribution finding:

"Inherent in this Court's ruling on the motions for summary judgment is the finding the award of the claims lien to [Via Christi] constitutes an equitable distribution of the claimed lien. The lien amount was utilized to obtain the settlement. The claimed lien amount constitutes costs of treatment of [Reed] at [Via Christi's] facility and was recovered in the settlement."

But the contents of the parties' summary judgment pleadings, attachments, and oral arguments did not adequately present the information necessary for the court to make the equitable-distribution determination.

In order to decide what constitutes an equitable distribution, district courts should consider certain factors, including the percentage of the requested damages the patient actually recovers, the amount and nature of other liens on the settlement proceeds, and the amount the patient actually receives after deducting such things as attorney fees. See *Kearney County Hospital v. Allstate Ins. Co.*, 38 Kan. App. 2d 641, 651-53, 170 P.3d 900 (2007), *rev. denied* 286 Kan. 1178 (2008). And where, as here, the patient and hospital disagree about what is an equitable distribution, the district court is instructed to hold a hearing on the matter. K.S.A. 65-406(c); *Kearney County*, 38 Kan. App. 2d at 653.

In this case, Reed asked for a total of $2,285,487 from Union Pacific. His medical expenses from Via Christi totaled 4% of that amount, and he had more than $20,000 in additional medical expenses from other medical providers. Reed recovered less than one-fourth of what he requested, yet the district court allowed Via Christi to enforce its entire lien, which comprised over 15% of Reed's settlement proceeds. Nine other lienholders had claims that were satisfied with the settlement proceeds, and over $200,000 of the settlement proceeds went to his attorneys, which left Reed with less than half of the original $540,000.

The parties' pleadings and oral arguments did discuss the breakdown of the settlement proceeds, but never in connection with the equitable-distribution issue. Reed mentioned that he recovered

only a fraction of the damages he sought from Union Pacific to show that he didn't receive a windfall by not paying for Via Christi's services. And Via Christi made a passing reference to the distribution in its summary-judgment pleadings. But neither party's written memoranda provided even a cursory argument about what would be an equitable distribution to Via Christi in light of all the circumstances.

At oral argument on the summary-judgment motions, the parties did discuss the equitable-distribution issue, but they didn't tie the discussion to any facts or evidence that would aid the district court in making findings on the issue, such as the proceeds' breakdown. Via Christi and the district judge discussed the judge's discretion in enforcing more than the statutorily required $5,000. But Via Christi just asked the judge to do what's fair—it didn't argue any facts that would help the judge make the decision. And Reed's counsel said the distribution was an action that the patient brings and that Reed didn't bring such an action in this case; the attorney even admitted that he didn't know what "equitable distribution" meant.

There's no indication that the district court considered the salient facts when it concluded that enforcing Via Christi's entire lien was an equitable distribution of Reed's settlement proceeds from Union Pacific. Our court emphasized in *Kearney County Hospital* that the district court should hold a hearing to determine what would be an equitable distribution. 38 Kan. App. 2d at 651-53. It appears here that the question of what would be an equitable distribution may understandably have been glossed over given the hundreds of paragraphs of factual submissions, with accompanying exhibits, that the parties offered on their cross-motions for summary judgment. We are reluctant on this record to make the assumption that the district court has given the sort of consideration to this issue called for in *Kearney County Hospital* and by the statute. The decision of what's fair or equitable is one for the district court to make. We simply conclude here that the chance is so substantial that the initial decision was made without full presentation and consideration of the required factors that we should set aside the district court's initial, unexplained ruling on this point

and remand for the district court to hold a hearing. At that hearing, the parties will present the facts necessary for the court to decide the equitable-distribution issue. We therefore vacate the district court's decision that Via Christi should recover its entire lien from the settlement proceeds and remand for further consideration of that issue. On remand, the district court should make some factual findings and legal conclusions that address the factors noted in *Kearney Co. Hospital.*

IV.  *Because the Award of All of Via Christi's Claim Is Being Vacated, We Need Not Decide the Parties' Dispute over Prejudgment Interest.*

The district court awarded Via Christi prejudgment interest on its claim. Because we are setting aside the district court's judgment to award Via Christi its full claim, the parties' dispute about whether prejudgment interest should be awarded is not ready for resolution. We will briefly address the applicable law, however, to provide some guidance for the district court on remand.

Ordinarily, prejudgment interest is only allowed on liquidated claims. K.S.A. 16-201; *Owen Lumber Co.*, 283 Kan. at 925. A claim is liquidated when its amount and due date are fixed and certain. 283 Kan. at 925. A hospital lien is not a typical lien claim in which a party files a lien for an amount that is claimed to be fixed and owed by contract. Instead, a hospital lien that exceeds $5,000 is not liquidated because the lien amount is not fixed or certain. The district court must enforce the lien in an amount that it finds to be an equitable distribution of the proceeds, which could be anywhere between $5,000 and the whole lien amount depending on the case's circumstances. See K.S.A. 65-406(c). Here, Via Christi's lien was well in excess of $5,000, and its own attorney told the district court that Via Christi was "not asking for a sum certain" but only asking the district court "to exercise its discretion and determine what's fair."

We recognize that a claim does not become unliquidated merely because there is a good-faith controversy about whether the amount is due at all. *Owen Lumber Co.*, 283 Kan. at 927. But when the hospital-lien statute requires that the district court exercise its

discretion so that only an equitable amount of the lien claim above $5,000 is awarded to the hospital, that portion of the lien simply cannot be a liquidated claim.

There are limited circumstances in which a district court may award prejudgment interest on an unliquidated claim if that's required to arrive at full compensation. *Equity Investors, Inc. v. Academy Ins. Group, Inc.*, 229 Kan. 456, 460, 625 P.2d 466 (1981); *Schatz Distributing Co. v. Olivetti Corp. of America*, 7 Kan. App. 2d 676, 682-83, 647 P.2d 820 (1982). We do not address whether such circumstances are present in this case; the district court should be the first to address that issue, since whether to award prejudgment interest is a matter addressed to the district court's discretion. See *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002). We do note, however, that the claim here is not a liquidated one for any recovery over $5,000, so the award of prejudgment interest on amounts awarded beyond that sum may be granted only in limited circumstances.

The district court's judgment determining the specific amount of the settlement proceeds that should be paid to Via Christi is vacated, and the case is remanded to the district court to hold a hearing on that issue. The district court's judgment is otherwise affirmed.