Tarika KELLY, Respondent,

Marie Espino, Respondent,

v.

**MARVIN'S MIDTOWN CHIROPRACTIC, LLC, Appellant.**

Nos. WD 72747, WD 72748.

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

Jerry W. Potocnik, for Appellant.

Andrew Schendel, for Respondents.

Before Division Three: VICTOR C. HOWARD, Presiding Judge, ALOK AHUJA, Judge and KAREN KING MITCHELL, Judge.

VICTOR C. HOWARD, Judge.

Marvin's Midtown Chiropractic, LLC, appeals the judgments of the trial court denying its claims for statutory liens on the proceeds of Tarika Kelly's and Marie Espino's personal injury settlements. It contends that the trial court erroneously declared that it was not entitled to a hospital lien under section 430.225, RSMo Cum. Supp.2011, because it was not supported in whole or in part by charity. The judgments are reversed, and the cases are remanded with directions.

This case arose from two interpleader actions filed by the Castle Law Firm to determine the ownership of certain insurance settlement proceeds. Marvin's Midtown Chiropractic is a chiropractic clinic organized under the laws of Missouri as a for-profit limited liability company. A large majority of its practice is dedicated to treating persons injured in automobile accidents. Marvin's is not a public hospital or public clinic, it is not incorporated as an eleemosynary institution, and it is not supported in whole or in part by charity.

On September 19, 2008, Tarika Kelly was involved in an automobile accident. Ms. Kelly received chiropractic treatments from Marvin's for injuries she sustained as a result of the accident. Her total bill was $2751.25.

Marie Espino was involved in an automobile accident on November 19, 2008. She also received chiropractic treatments from Marvin's for injuries she sustained as a result of the accident. Her total bill was $2401.25.

Both Ms. Kelly and Ms. Espino retained the Castle Law Firm to represent them in their personal injury claims. Marvin's sent notices of liens of service to the Castle Law Firm and to the tortfeasors' insurance carriers. Ms. Kelly ultimately settled her claim for $7300. Ms. Espino settled her claim for $8500. The Law Firm held back $2751.25 and $2401.25, respectively, from the settlement proceeds and filed the petitions in interpleader claiming that both their clients and Marvin's claimed an interest in them.

Both cases were consolidated for trial. At trial, Marvin's argued that it was entitled to assert statutory hospital liens under section 430.225 against Ms. Kelly's and Ms. Espino's insurance recoveries. Ms. Kelly and Ms. Espino contended that Marvin's was not entitled to the liens because it was not supported in whole or in part by charity, a requirement they argued was imposed by the statute. The trial court entered judgments against Marvin's and awarded the interpleaded funds to Ms. Kelly and Ms. Espino finding that Marvin's did not create valid statutory liens on the women's personal injury settlements because it is not within the class of recipients entitled to enforce hospital liens; specifically because it is not supported in whole or in part by charity. This appeal by Marvin's followed.

■ The sole issue in this appeal is whether Marvin's created valid statutory hospital liens on the proceeds of Ms. Kelly's and Ms. Espino's personal injury settlements for the services that it provided them.

■ Review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Beckett v. Dep't of Soc. Servs., Div. of Med. Servs.,*

948 S.W.2d 250, 251 (Mo.App. E.D.1997). As such, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Statutory interpretation is a question of law that is reviewed *de novo.* *S.S. v. Mitchell,* 289 S.W.3d 797, 799 (Mo.App. E.D.2009).

■ Hospital lien statutes exist in most states, and most were first adopted in the Great Depression. *Via Christi Reg'l Med. Ctr., Inc. v. Reed,* 45 Kan.App.2d 356, 247 P.3d 1064, 1068 (2011). They were designed with a dual purpose: to ensure that injured patients are quickly treated without first considering if the patients are able to pay and to protect health care providers financially so that they could continue to provide care. *Id.*

Section 430.230, RSMo 2000, Missouri's hospital lien law, was originally enacted in 1941. It provides, in pertinent part:

> Every public hospital or clinic, and every privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in part by charity, located within the state of Missouri, or any such hospital duly incorporated under the laws of Missouri providing for the incorporation of eleemosynary institutions, shall have a lien upon any and all claims, counterclaims, demands, suits, or rights of action of any person admitted to any hospital, clinic or other institution and receiving treatment, care or maintenance therein for any cause including any personal injury sustained by such person as the result of the negligence or wrongful act of another, which such injured person may have, assert or maintain against the person or persons causing such injury for damages on account of such injury, for the cost of such services . . . .

§ 430.230. The statute allows certain hospitals and clinics to file liens against patients and participate in the recovery of any personal injury claim that the patient may have in order to recoup payment for services. *SSM Cardinal Glennon Children's Hosp. v. State,* 68 S.W.3d 412, 414 (Mo. banc 2002); §§ 430.230 to 430.250. Section 430.230 allows only three classes of providers to assert liens: (1) a "public hospital or clinic," (2) a "privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in part by charity," and (3) a "hospital duly incorporated under the laws of Missouri providing for the incorporation of eleemosynary institutions." To qualify for a lien under section 430.230, a hospital must also be either located in Missouri or duly incorporated under the laws of Missouri. § 430.230; *Beckett,* 948 S.W.2d at 251.

During the General Assembly's 1999 legislative session, at least three bills were introduced with the purpose of creating a new hospital lien law. *SSM Cardinal Glennon,* 68 S.W.3d at 414. "All of these bills sought to expand the scope of the hospital lien law to allow certain defined clinics, health practitioners and other institutions the same rights as hospitals to hold liens on any claims a patient may have for personal injury." *Id.* at 414–15. None of the bills were passed. *Id.* at 415.

In January 1999, House Bill 343 was introduced. *Id.* It sought to change or repeal provisions regarding the procedure and qualifications for licensing various professions. *Id.* As it worked its way through the House and Senate, various amendments were added to H.B. 343. *Id.* One was Senate Amendment No. 9 creating a new section 430.225, RSMo, which altered the scope of the hospital lien law in a manner similar to that proposed in the three previous bills. *Id.* "[T]he law was

expanded to cover certain additional health practitioners and provided that all lienholders who gave notice would share in fifty percent of the amount due the patient in the proportion that each claim bears to the total amount of all other liens of health care providers." *Id.* H.B. 343, which included the new section 430.225, was signed into law in July 1999. *Id.* at 416.

A number of privately maintained hospitals supported in whole or in part by charity challenged the constitutionality of H.B. 343. *Id.* "The hospitals concluded that the amendment to the hospital lien law threatened to reduce the amounts that might otherwise be available to the hospitals to cover unpaid fees." *Id.* The Missouri Supreme Court found that inclusion of the new section 430.225 amending the hospital lien law in a bill titled "relating to professional licensing" violated the constitutional single-subject requirement. *Id.* at 417. It further determined that H.B. 343 relating to professional licensing was complete and workable and would have been adopted without the inclusion of section 430.225. *Id.* at 418. Thus, the Supreme Court severed from H.B. 343 the provision that created section 430.225 and declared it void. *Id.*

In 2003, the General Assembly reenacted section 430.225 without apparent change. It provides, in pertinent part:

2. Clinics, health practitioners and other institutions, as defined in this section, shall have the same rights granted to hospitals in sections 430.230 to 430.250. § 430.225.2. Clinics, health practitioners and other institutions are defined in subsection 1 of section 430.225 as follows:

(2) "Clinic", a group practice of health practitioners or a sole practice of a health practitioner who has incorporated his or her practice;

(3) "Health practitioner", a chiropractor licensed pursuant to chapter 331, RSMo,

a podiatrist licensed pursuant to chapter 330, RSMo, a dentist licensed pursuant to chapter 332, RSMo, a physical therapist licensed under chapter 334, RSMo, a physician or surgeon licensed pursuant to chapter 334, RSMo, or an optometrist licensed pursuant to chapter 336, RSMo, while acting within the scope of their practice;

(5) "Other institution", a legal entity existing pursuant to the laws of this state which delivers treatment, care or maintenance to patients who are sick or injured.

It is undisputed that Marvin's is a chiropractic clinic under sections 430.225.1(2) and (3). The trial court concluded, however, that because Marvin's is not supported in whole or in part by charity, it is not entitled to assert a statutory lien. The question in this appeal, therefore, is whether the health care providers specified in section 430.225 must be supported in whole or in part by charity to be entitled to a hospital lien under sections 430.230 to 430.250 as determined by the trial court.

■■■ The primary rule of statutory interpretation is to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *S. Metro. Fire Prot. Dist. v. City of Lee's Summit,* 278 S.W.3d 659, 666 (Mo. banc 2009). A court will apply rules of construction only when the meaning of the words of the statute is ambiguous or leads to an illogical result defeating the purpose of the legislation. *Baldwin v. Dir. of Rev.,* 38 S.W.3d 401, 405 (Mo. banc 2001). When the General Assembly amends a statute, the amendment is presumed to effect some change in the existing law. *Id.*; *State v. Swoboda,* 658 S.W.2d 24, 26 (Mo. banc 1983). In other words, "the legislature will not be charged with having

done a meaningless act." *Swoboda,* 658 S.W.2d at 26. "[W]hat the legislature intended is to be concluded from the language which it used." *Id.*

■ Section 430.225 amended the hospital lien law. Consideration of the plain and ordinary meaning of the words of statute reveals that the General Assembly intended to broaden the scope of the hospital lien law to cover certain additional health care providers, specifically, clinics, health practitioners, and other institutions as defined in the statute. Section 430.225 is not ambiguous and does not contain a requirement that these health care providers must be supported in whole or in part by charity to hold a hospital lien. To read into the statute such a requirement contradicts the plain language of the statute and supplies words omitted by the General Assembly. A court may not change or add to a statute by supplying omitted words or phrases under the pretense of statutory construction, especially where the statute is not ambiguous. *Vocational Servs., Inc. v. Developmental Disabilities Res. Bd.,* 5 S.W.3d 625, 631 (Mo.App. W.D.1999). If the General Assembly had intended to give the right to assert a hospital lien only to clinics, health practitioners, and other institutions that are supported in whole or in part by charity, it would used have used those words in section 430.225.2 or in the definitions of clinic, health practitioner, and other institution in sections 430.225.1(2), (3), and (5) as it did in section 430.230.[1]

In arguing that the additional health care providers must be public or charitable institutions such as the providers in sec-tion 430.230, the dissent determines that the public or charitable requirement defines, in part, the rights granted to hospitals in section 430.230. The "rights granted … in sections 430.230 to 430.250," however, are simply the rights to assert and enforce a hospital lien in certain situations. By virtue of section 430.225.2, additional health care providers are entitled to those "same rights." The public or charitable requirement of section 430.230 does not define the rights granted in that statute but identifies, in part, which providers in that statute are granted the rights.

Even if section 430.225 were deemed to be ambiguous because of the alternative reading the dissent suggests, the outcome would be the same. In construing an ambiguous statute, courts should give the law a liberal construction and strive to achieve the legislature's overall objective. *See* § 1.010, RSMo 2000 ("all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof"); *Holtcamp v. State,* 259 S.W.3d 537, 540 (Mo. banc 2008)("This Court gives broad effect to a statute's language to effectuate the purpose of the legislature."). Here, the General Assembly's evident objective in enacting section 430.225 was to expand the universe of persons or entities entitled to enforce liens to recover the costs of health care services those persons or entities had provided. The legislature's steadfast purpose to increase the availability of hospital liens is demonstrated not only by the fact that it enacted section 430.225.2 *twice,* in both 1999 and 2003, but also by the fact that the legislature expanded the scope of section

---

1. Additionally, section 430.225 describes the entities entitled to a hospital lien differently from the manner in which eligible entities are described in section 430.230 itself. "When different terms are used in different subsections of a statute, it is presumed that the legislature intended the terms to have different meaning and effect." *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 251–52 (Mo. banc 2003), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003).

430.225.2 in 2006 to include physical therapists, *see* S.B. 1057, 2006 Mo. Laws 764, and by its enactment of section 190.250.2, RSMo Cum.Supp.2011, in 2002, which provides in terms identical to section 430.225.2 that "[a]mbulance services shall have the same rights granted to hospitals in sections 430.230 to 430.250, RSMo."

Obviously, construing section 430.225.2 so as not to impose a charitable purpose requirement on clinics, health practitioners, and other institutions provides lien rights to a larger universe of additional persons or entities than the dissent's interpretation. This is particularly true given that it appears that few, if any, chiropractors, podiatrists, dentists, physical therapists, physicians, surgeons, or optometrists (whether working alone or together in clinics) are supported in whole or in part by charity. Requiring such health care providers to be supported by charity would preclude most, if not all, of them from asserting a statutory lien, and section 430.225 would have achieved little if any change in the existing law.

Furthermore, to read into section 430.225 the requirement that the health care providers listed therein be supported by charity would render the statute, in substantial part, useless and meaningless. Such a requirement in section 430.225 would be at least partially redundant to section 430.230, which already provides hospital liens to privately maintained clinics and other institutions supported in whole or in part by charity, again achieving little change in existing law.

The plain and ordinary language of section 430.225 gives clinics, health practitioners, and other institutions defined in the statute the right to assert hospital liens

under section 430.230 to 430.250 without the requirement that they be supported in whole or in part by charity. The trial court, therefore, erred in finding that Marvin's did not create a valid statutory lien on the proceeds of Ms. Kelly's and Ms. Espino's personal injury settlement proceeds pursuant to sections 430.225 and 430.230.

The judgments are, therefore, reversed, and the cases are remanded to the trial court with directions to enter judgments in favor of Marvin's.

AHUJA, J. concurs.

MITCHELL, J. dissents in separate opinion.

KAREN KING MITCHELL, Judge.

Appellant Marvin's Midtown Chiropractic ("Marvin's" or "the appellant") argues, and the majority agrees, that Marvin's has statutory authority[2] to assert hospital liens because section 430.225 grants it the right to do so without requiring that it be supported by charity. Because the plain language reading of section 430.225 leads to the opposite result and because the majority's reading of section 430.225 renders section 430.230 meaningless or, in the alternative, it grants clinics, health practitioners, and other health care institutions significantly greater rights to enforce liens than hospitals, and because it is not clear to me that the legislature intended either result, I respectfully dissent.

Section 430.230 provides:

Every public hospital or clinic, and every privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in

---

**2.** Marvin's concedes that, in this case, its authority to assert a lien exists, if at all, by virtue of section 430.225. In other words, it does not allege that the liens were established

by agreement. *Cf. Marvin's Midtown Chiropractic Clinic, L.L.C. v. State Farm Mut. Auto. Ins. Co.,* 142 S.W.3d 751, 755 (Mo.App. W.D. 2004).

part by charity, located within the state of Missouri, or any such hospital duly incorporated under the laws of Missouri providing for the incorporation of eleemosynary institutions, shall have a lien upon any and all claims, counterclaims, demands, suits, or rights of action of any person admitted to any hospital, clinic or other institution and receiving treatment, care or maintenance therein for any cause including any personal injury sustained by such person as the result of the negligence or wrongful act of another, which such injured person may have, assert or maintain against the person or persons causing such injury for damages on account of such injury, for the cost of such services . . . .

To facilitate hospitals' recovery of the value of their services, the statute allows *certain* health care providers to assert liens against any personal injury claim that a care-recipient may have. *SSM Cardinal Glennon Children's Hosp. v. State*, 68 S.W.3d 412, 414 (Mo. banc 2002); §§ 430.230–430.250. However, the right to assert a lien under section 430.230 does not exist unless the health care provider is located in Missouri and falls into one of three categories: (1) a "public hospital or clinic"; (2) a "privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in part by charity"; or (3) a "hospital duly incorporated under the laws of Missouri providing for the incorporation of eleemosynary institutions." § 430.230.

In 2003, the General Assembly enacted section 430.225. It provides:

2. Clinics, health practitioners and other institutions, as defined in this section, shall have the same rights granted to hospitals in sections 430.230 to 430.250.

§ 430.225.2. Section 430.225.1 defines "clinics, health practitioners and other institutions" as follows:

(2) **"Clinic"**, a group practice of health practitioners or a sole practice of a health practitioner who has incorporated his or her practice;

(3) **"Health practitioner"**, a chiropractor licensed pursuant to chapter 331, a podiatrist licensed pursuant to chapter 330, a dentist licensed pursuant to chapter 332, a physical therapist licensed under chapter 334, a physician or surgeon licensed pursuant to chapter 334, or an optometrist licensed pursuant to chapter 336, while acting within the scope of their practice;

. . .

(5) **"Other institution"**, a legal entity existing pursuant to the laws of this state which delivers treatment, care or maintenance to patients who are sick or injured.

Thus, when the definitions of subsection 430.225.1 are applied to subsection 430.225.2, it becomes evident that all health care providers in Missouri have the "same rights granted to hospitals in section[ ] 430.230." The issue presented here is whether the rights granted by section 430.225 are preconditioned on the health care provider being a public or charitable institution, as the rights given by section 430.230 are.

The primary rule of statutory interpretation is to ascertain the intent of the legislature by considering the plain and ordinary meaning of the words used in the statute. *S. Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009). A court will apply rules of construction only when the meaning of the words of the statute is ambiguous or leads to an illogical result defeating the purpose of the legislation. *Baldwin v. Dir. of Rev.*, 38 S.W.3d 401, 405 (Mo. banc 2001). *If possible*, we will avoid a construction that renders statutory language redundant. *In*

*re Estate of Hough*, 457 S.W.2d 687, 692 (Mo.1970). We will avoid a construction that leads to an absurd result. *Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 109 (Mo.App. W.D. 2008).

Here, the plain and ordinary meaning of "same rights granted to hospitals in section[ ] 430.230" is not ambiguous. "Same rights" means that, under section 430.225, health care providers have rights that *do not differ* from the rights that hospitals have under section 430.230. As explained, the rights granted by section 430.230 only exist if the institution is public or charitable. Marvin's is neither: therefore, under the plain language of the statutes, it has no right to assert a lien. Granting a private, non-charitable institution rights when, under section 430.230, a private, non-charitable hospital would have none would not be granting the former institution the "same rights granted to hospitals in section[ ] 430.230." It would be granting the former institutions *different*—and *greater*—rights, rights that are subject to fewer qualifications. Thus, applying the majority's reading of section 430.225 would contravene the plain meaning of "same rights," and therefore I would reject such a reading.[3]

Marvin's argues that, under section 430.230, hospitals have a *right* to assert liens but that right is *limited* in that, in order to assert the lien, a hospital must be public, charitable, or supported by charity. Following that characterization, Marvin's argues, and the majority agrees, that section 430.225's "same rights" language imports the *rights* of section 430.230 but not the statute's *limitations*. I disagree with this characterization of section 430.230,

and, since the premise of the argument fails, I would reject the conclusion that Marvin's and the majority draw from it.

The statute does not state that all hospitals have the right to assert a lien but that the right is limited by the public-charitable qualification; rather, it is the public or charitable nature of the hospital that gives rise to the right in the first place. "Every *public* hospital or clinic, and every privately maintained hospital, clinic or other institution ... *which* is supported in whole or in part by charity ... shall have a lien ...." § 430.230 (emphasis added). By the plain terms of the statute, hospitals do not have a default right to assert a lien which a public-charitable "limitation" takes away: the right to the lien simply does not exist unless the hospital is public or charitable. Under this lens, the majority's conclusion that Marvin's and other clinics, health practitioners and health care institutions have the rights but not the limitations of section 430.230 would fail. Marvin's has the "same right" given to a hospital by section 430.230. Any right to a lien granted by that section owes its existence to the public or charitable nature of the institution asserting the lien. Since Marvin's is neither public nor charitable, it has no statutory authority to assert a lien, unless we construe "same right" to mean "different right," which I would not do. It is not a matter of Marvin's right being limited: it is a matter of such a right existing, which, as explained, it does not.

Furthermore, the majority opinion implies the grant of a right to assert a lien without the requirement that clinics and health practitioners be located in Missouri. *See* § 430.230 ("Every public hospital or

---

**3.** Seen another way, Marvin's argument essentially reads section 430.225 as giving it the "same rights granted to *public or charitable* hospitals in section 430.230." But that is not what the statute says—it grants Marvin's the "same rights" as "hospitals," and "hospitals" may only assert liens under sections 430.230 to 430.250 if they meet specific eligibility criteria.

clinic, and every privately maintained hospital, clinic or other institution for the care of the sick, which is supported in whole or in part by charity, *located within the state of Missouri* ...") (emphasis added). The majority provides no explanation why the legislature would require, as a prerequisite to asserting a lien, "hospitals" to be located in Missouri, *see* § 430.230, and "other institutions" to at least be incorporated in Missouri, *see* § 430.225.1(5), while removing any such requirement for "clinics" and "health practitioners." Thus, the majority's reading of the statute leads to at least an odd, if not absurd, result.

The majority accepts the appellant's argument that, unless its reading of the statute is adopted, section 430.225 will be rendered meaningless in that virtually no health practitioners draw any support from charities. But there is no evidence before us that the appellant's claim on this point is accurate. And even if the claim is accurate, it is not absurd to suppose that, in enacting section 430.225, the legislature intended to encourage charitable activity or reward those health practitioners that currently receive charitable support, even if they are few. That is, section 430.225 may create an incentive for health practitioners to engage in the type of activities likely to draw support from charities. Such a statute is not meaningless.

The majority argues that my reading of section 430.225 creates a "partial[ ] redundan[cy] to section 430.230, which already provides hospital liens to privately maintained clinics and other institutions supported in whole or in part by charity." Section 430.225.2 gives clinics, health practitioners, and other institutions *all* the rights hospitals have under sections 430.230–250. It is true that section 430.230 already covers "clinics" and "other institutions" but section 430.250 does not. The latter section gives *hospitals* (but not clinics or other institutions) the right to recover from law firms, insurance carriers, or other persons who have (1) received notice of a valid lien; and (2) paid the patient the money owed to the hospital. Thus, section 430.225.2 is not redundant with respect to clinics and other institutions because, absent that section, they would not share the right to recover under section 430.250.

Moreover, granting that my reading of the statutes creates a *partial* redundancy in that clinics and other institutions are given the same qualified right to assert liens under both section 430.225.2 and section 430.230,[4] a redundancy would also flow from the majority's reading of the statute. Under the majority's reading of section 430.225.2, section 430.230 will be rendered largely redundant in that none of the preconditions to asserting a hospital lien will have any meaning. That is, that hospitals are themselves "other institutions" as defined by section 430.225.1, and, therefore, under the majority's reading, hospitals (and, indeed, all health care providers)

---

4. This redundancy may be more apparent than real. Prior to the adoption of section 430.225, the prevailing understanding of the Hospital Lien Law was apparently that it provided lien rights solely to *hospitals,* despite the other entities referenced in section 430.230. *See SSM Cardinal Glennon,* 68 S.W.3d at 417 (referring to hospitals as "previously the sole beneficiaries of the hospital lien law"); Glenn E. Bradford, *Missouri's Hospital Lien Statute,* 59 Mo. Bar J. 22, 26 (2003) (observing that, in opposing the enactment of section 430.225, "[i]t appears that Missouri hospitals are anxious to keep the advantage of the hospital lien solely for themselves"). At a minimum, prior to the adoption of section 430.225 it was not clear that "clinics" or "other institutions" could include establishments providing dental, chiropractic, optometry, or other services now comprehended within the statute by virtue of the broad definition of "health practitioner" in section 430.225.1(3).

would be exempted from the eligibility requirements that section 430.230 takes great pains to lay out.[5] If the legislature had wanted to dispense with the public-charitable precondition entirely, it could have easily amended section 430.230 to so provide, as opposed to enacting a separate section to dispense with the requirement by implication.[6]

To avoid this partial redundancy created to the majority's interpretation of section 430.225, "other institutions" must be read narrowly to exclude hospitals. But "hospital" is not defined by section 430.225, and the definition of "other institutions" set out in that section is clearly broad enough to include hospitals. Excluding hospitals from the definition of "other institutions," in combination with the majority's interpretation of section 430.225, means that, with the exception of certain private hospitals (including those located in Missouri), all health care providers (even clinics and health practitioners located outside of Missouri) have the right to assert liens. This interpretation of the interplay between sections 430.225 and 430.230, turns on its head the approach to health care liens that existed before the 2003 amendment. That is, before 2003, hospitals were favored over other health care providers in that they were given a greater right to obtain liens. To avoid the majority opinion rendering section 430.230 completely meaningless, hospitals would have to be excluded from the definition of "other institutions" under section 430.225 and thus be granted more restrictive lien rights than all other health care providers. It is not clear to me that the legislature intended this anomalous result.

## Conclusion

Section 430.230 gives hospitals a qualified right to assert a lien. It is my view that section 430.225.2 grants all health care providers the same qualified right that hospitals have under section 430.230. The majority holds that section 430.225.2 grants all health care providers (with the possible exception of hospitals) an unqualified right to assert a lien, or a right that is qualified in some, but not all, of the ways that section 430.230's right is qualified, and thus holds that "same right" means "different right." I would not apply a construction that rejects the plain meaning of the statute's language and leads to inevitable anomalies.

The interplay between sections 430.225 and 430.230 is confusing. Even with the guidance provided by the majority opinion, there are questions left unanswered: for example, are hospitals "other institutions" that enjoy an unqualified right to a lien under section 430.225 provided to other health care providers by the majority opinion, or do they enjoy only the qualified lien rights provided in section 430.230? I respectfully suggest that the legislature revisit sections 430.225 and 430.230 to clarify how these two sections are to be read together.

---

5. Section 430.235 also takes great pains to lay out the eligibility requirements.

6. Such repeals by implication are not favored. *See, e.g., Turner v. School Dist. of Clayton,* 318 S.W.3d 660, 667 (Mo. banc 2010).