Ricky J. HUEY, Plaintiff–Appellant,

v.

Gary MEEK, D.C., d/b/a Meek Chiropractic, Defendant–Respondent.

No. SD 32286.

Missouri Court of Appeals, Southern District, Division Two.

April 29, 2013.

Application for Transfer to Supreme Court Denied April 29, 2013.

Application for Transfer Denied Aug. 13, 2013.

Daniel P. Molloy, Springfield, MO, for Appellant.

Ann R. Littell Mills, Springfield, MO, for Respondent.

MARY W. SHEFFIELD, J.

Ricky J. Huey ("Huey") appeals from the trial court's grant of summary judgment in favor of Gary Meek ("Meek") in a declaratory action case. Huey was in an automobile accident and received various medical treatments as a result. Prior to receiving chiropractic treatment from Meek, Huey signed documents entitled "Consensual Lien" ("the lien") and "Assignment of Benefits" ("the assignment") which purported to transfer to Meek the right to receive certain funds arising from a future personal injury recovery. The trial court's grant of summary judgment found in favor of Meek, declaring the lien and the assignment to be valid. Huey argues those documents were not valid. We agree and reverse the trial court's judgment. We remand with directions to enter judgment in favor of Huey.

### Standard of Review

■ "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The standard of review is *de novo*, and "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.*

### Factual and Procedural Background

On December 20, 2010, the car Huey was driving was struck from behind by another vehicle which in turn had been struck by a car driven by Daniel Williams ("Williams"). At the scene, Huey reported neck pain, but did not seek medical treatment.

Huey later sought treatment from Meek, a chiropractor licensed under the laws of the State of Missouri. On January 10, 2011, prior to receiving medical care, Huey signed both the lien and the assignment.

The lien stated Huey granted Meek a lien on the proceeds "of any and all claims, counterclaims, demands, suits or rights of action arising from [Huey's] personal injury claim against any persons or entities responsible for [Huey's] injuries sustained on or about Dec. 20, 2010 treated by [Meek]." The document went on to provide the lien

> shall be the full and exact amount necessary to pay the reasonable charges for the necessary treatment of [Huey's] injuries rendered by [Meek], up to the amounts of the proceeds. This lien shall bind any insurance companies, attorneys

or other parties who are or become obligated to pay the Proceeds to [Huey]. The lien amount shall be paid from the Proceeds by any such parties directly to [Meek].

> This is a consensual lien as authorized by Missouri case law. This is not a statutory lien under Sec. 430.250 R.S.Mo. [sic], and is therefore not restricted by the limitations therein. [Meek] has no power whatsoever to influence, pursue or otherwise control [Huey's] subject claims, counterclaims, demands, suits, settlements or rights of action, and the parties specifically agree that no assignment of such is made or intended to be made herein.

An attached document further explained the lien should operate pursuant to *Marvin's Midtown Chiropractic Clinic, L.L.C. v. State Farm Mut. Auto. Ins. Co.*, 142 S.W.3d 751 (Mo.App. W.D.2004), and *Ford Motor Credit Co. v. Allstate Ins. Co.*, 2 S.W.3d 810 (Mo.App. W.D.1999), and thus was "not subject to an automatic reduction if the lien exceeds 50% of the value remaining after attorney fees and expenses." Meek sent a notice of lien to the Corbett Law Firm.

In the assignment, Huey assigned the payment of all insurance benefits to Meek. The assignment stated it was being made pursuant to section 376.427.[1]

On January 6, 2012, Huey filed suit against Williams and Williams' employer to recover for injuries sustained during the December 20, 2010 accident. The Corbett Law Firm represented Huey in that action.

On February 2, 2012, Huey, again represented by the Corbett Law Firm, filed a petition for declaratory judgment, asking the trial court to declare the lien and the

---

1. All references to sections 376.427 and 430.230 are to RSMo (2000). All references to section 430.225 are to RSMo Cum.Supp. (2003).

assignment to be void. Meek filed an answer and counter-petition for declaratory judgment, asking the court to declare the lien and assignment of benefits to be valid. The parties subsequently filed cross-motions for summary judgment.

The trial court granted Meek's motion for summary judgment and denied Huey's motion for summary judgment. The trial court found both the lien and the assignment to be valid under Missouri law, citing *Marvin's Midtown, Ford Motor Credit,* and section 376.427. Huey appeals.

### Discussion

### The Lien

In his first point, Huey argues the consensual lien was not valid (1) because assignments of personal injury actions are void under Missouri law and (2) because it "was not filed pursuant to § 430.225[.]" Huey's second argument has merit.

The general rule in Missouri is that public policy prohibits an assignment of bodily injury claims. *E.g., Hays v. Missouri Highways and Transp. Comm'n,* 62 S.W.3d 538, 540 (Mo.App. W.D.2001); *Schweiss v. Sisters of Mercy, St. Louis, Inc.,* 950 S.W.2d 537, 538 (Mo.App. E.D. 1997). The prohibition was historically based on common law rules regarding the survivability of a cause of action, but in the twentieth century, Missouri courts continued to apply the rule based on considerations of public policy. *See Forsthove v. Hardware Dealers Mut. Fire Ins. Co.,* 416 S.W.2d 208, 217 (Mo.App. St.L.D.1967). It was felt that unscrupulous people would purchase causes of action and thus traffic in lawsuits for pain and suffering. *Id.* They found "[t]he law will not consider the injuries of a citizen, whereby he is injured in his person, to be, as a cause of action, a commodity of sale." *Id.* at 216 (quoting *Beechwood v. Joplin–Pittsburg Ry. Co.,* 173 Mo.App. 371, 158 S.W. 868, 870 (1913)).

The rule prohibiting an assignment of a cause of action for personal injury has been called "long-recognized and well-established[.]" *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418, 425 (Mo.App. Spfld.D.1965). The roots of this concern for the rights and suffering of the injured party can be seen as early as the turn of the twentieth century. For example, in *McLeland v. St. Louis Transit Co.,* the court found an assignment of a personal injury cause of action to be invalid in part because enforcing it would violate a statute providing that every cause of action had to be brought by the real party in interest. 105 Mo.App. 473, 80 S.W. 30, 31 (1904). Furthermore, the prohibition has not been limited to assignments. Any contractual arrangement allowing a third party to receive the benefits of a cause of action for personal injury was suspect. *See, e.g., Jones v. Aetna Cas. & Sur. Co.,* 497 S.W.2d 809, 812 (Mo.App. K.C.D.1973) (finding the legal effect of a trust agreement was to create an assignment of a cause of action for personal injuries); *Chuning v. Calvert,* 452 S.W.2d 580, 584 (Mo.App. K.C.D.1970) (finding the legal effect of a subrogation clause in an insurance contract was to create an assignment of a cause of action for personal injuries); *Chumbley,* 394 S.W.2d at 423 (same). Nevertheless, we do not need to determine whether the consensual lien constituted an assignment of an action under the common law because the consensual lien has been abrogated by Missouri's hospital lien statute.

In 1941, Missouri enacted its first hospital lien statute. *Kelly v. Marvin's Midtown Chiropractic, LLC,* 351 S.W.3d 833, 835 (Mo.App. W.D.2011). That statute created a limited exception to the prohibition of assignments of personal injury causes of action by giving certain hospitals and clinics a lien on suits or rights of actions for personal injury in the amount

of the cost of care provided to the injured person, with certain limitations. *See* §§ 430.230, 430.225.3. The statute was "designed with a dual purpose: to ensure that injured patients are quickly treated without first considering if the patients are able to pay and to protect health care providers financially so that they could continue to provide care." *Kelly*, 351 S.W.3d at 835. To that end, "[t]he statute allows certain hospitals and clinics to file liens against patients and participate in the recovery of any personal injury claim that the patient may have in order to recoup payment for services." *Id.* This statute balanced the needs of health care providers against the public policy reasons for the prohibition on the assignment of personal injury causes of actions. That balance allowed injured parties to get treatment and thus served the underlying policy reason for the prohibition. At the same time, the treatment provider's lien gave the treatment provider greater priority than ordinary creditors.

In 1999, the legislature attempted to expand the scope of the hospital lien statute. *Id.* at 835. The new law allowed additional health care practitioners to take advantage of the benefits of the statute. *Id.* at 835–36. A group of hospitals challenged the constitutionality of that law because it violated the single subject requirement of the Missouri Constitution. *Id.* at 836. *See also SSM Cardinal Glennon Children's Hosp. v. State*, 68 S.W.3d 412 (Mo. banc 2002). In 2002, the Supreme Court of Missouri agreed, held the offending section void, and severed it from the law. *Id.* at 418.

In 2003, the legislature again amended section 430.225, the section which sets out the definitions for the hospital lien statute. *Kelly*, 351 S.W.3d at 836. That amendment, substantially the same as the 1999 version, expanded the universe of entities that could take advantage of the hospital lien statute to include health practitioners and defined health practitioners to include chiropractors. *Id.*, §§ 430.225.1(3), 430.225.2.

Against that background, we now consider the holdings in *Ford Motor Credit* and *Marvin's Midtown*, cases that broke from the consistent path of our case law as noted above. In *Ford Motor Credit*, an automobile owner defaulted on his automobile loan. 2 S.W.3d at 811. Ford Motor Credit, the creditor on the automobile loan, sued the owner. *Id.* The owner told Ford Motor Credit's representative he was expecting a settlement in a personal injury action that arose out of a car crash, and "Ford Motor Credit agreed to drop its lawsuit against [the owner] in exchange for his giving it a lien on, and an assignment of, any proceeds which he might receive[.]" *Id.* Notice was provided to the insurance company for the defendant in the personal injury action, and the insurance company accepted the lien after requiring Ford Motor Credit to make certain changes in the documentation. *Id.* at 811–12. The trial court held the lien was valid, and on appeal, the Western District of this Court affirmed based on a distinction between a lien and an assignment. *Id.* at 812. "A lien is a charge *on* property[,]" the court reasoned, while an assignment "is a right *in* the property itself." *Id.* (emphasis in original). The court dismissed the holding in *Schweiss*—a case enunciating the general rule that assignments of personal injury actions are void as against public policy— because the court in *Schweiss* did not explain why assigning a claim is no different from assigning the proceeds of a claim. *Ford Motor Credit*, 2 S.W.3d at 812–13. In rejecting the public policy reasons for holding the lien invalid, the court noted that Ford Motor Credit had no power or control over whether the owner settled or otherwise disposed of the claim. *Id.* at 813.

The holding in *Ford Motor Credit* was expanded to include a lien in favor of a chiropractic clinic in *Marvin's Midtown.* In that case, a chiropractic clinic sued two insurance companies to determine the validity of a number of liens the clinic had obtained on the proceeds of its patients' personal injury claims. *Marvin's Midtown,* 142 S.W.3d at 752. The documents that purported to create those liens stated those liens were created under *Ford Motor Credit. Marvin's Midtown,* 142 S.W.3d at 753. The clinic filed a petition for declaratory relief in December 2002, and the trial court granted summary judgment for the insurance companies in August 2003. *Id.* On appeal, the Western District found the liens given to the clinic were similar to the one in *Ford Motor Credit* because the patients retained control over their personal injury claims. *Marvin's Midtown,* 142 S.W.3d at 755. Consequently, the Western District found the liens were enforceable. *Id.* Nowhere in the opinion did the court mention section 430.230 or section 430.225. *Id.*

 The issue thus becomes whether the statutory remedy provided by section 430.225 is exclusive and preempts the remedy created in *Marvin's Midtown.*[2] "Generally, 'a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect.'" *McGhee v. Dixon,* 973 S.W.2d 847, 849 (Mo. banc 1998). That rule does not apply, however, "when 'the statutory remedy fully comprehends and envelops the remedies provided by common law.'" *Id.* The rule is also different when the statute creates a new right: where "the statute creates a new right and prescribes a remedy, the statutory remedy is exclusive." *State ex*

*rel. Slibowski v. Kimberlin,* 504 S.W.2d 237, 240 (Mo.App. K.C.D.1973) (quoting *Chandler v. Chicago & A.R. Co.,* 251 Mo. 592, 158 S.W. 35, 37 (1913)).

The Supreme Court of Missouri examined the issue of whether a statutory remedy fully comprehends a pre-existing remedy in *McGhee. McGhee* involved a claim of wrongful discharge before the Personnel Advisory Board. 973 S.W.2d at 847–48. The employee was successful on the claim and subsequently sought attorney fees based on two legal authorities, one statutory and the other based on case law. *Id.* at 848. The underlying wrongful discharge claim had been decided prior to the adoption of the statute which created the right to attorney fees. *Id.* The Personnel Advisory Board denied the statutory claim based on a limitation contained in the statute, but awarded attorney fees based on the case law. *Id.* The employer appealed, and the employee argued on appeal that the statutory remedy was not exclusive. *Id.* at 849. The Supreme Court of Missouri found the remedy provided in the statute conflicted with the remedy provided under case law because the statute did not allow an award of attorney fees if the employer's position was substantially justified but the case law remedy did allow such an award. *Id.* Because of this conflict, the Supreme Court determined the statutory remedy controlled. *Id.* The holding in *McGhee* can be stated more generally as providing that where a statutory remedy conflicts with an existing common law remedy by providing limitations on the common law remedy, the statutory remedy is deemed exclusive even without express statutory language to that effect.

---

2. In examining this question, we need not and do not address the continued vitality of the holding in *Ford Motor Credit.* That case is factually distinguishable, as the lien holder in that case was not one of the types of entities covered by the hospital lien statute. *See* §§ 430.225.1(3), 430.230.

■ Here, as in *McGhee*, the statutory remedy conflicts with the *Marvin's Midtown* common law remedy. While both the statute and *Marvin's Midtown* would allow a lien on the proceeds of a personal injury action, the statute contains limitations that are not contained in the case law remedy. For example, under the hospital lien statute, the total of all health care providers' liens is limited to no more than 50 percent of the amount due the patient. § 430.225.3. This restriction protects personal injury claimants and helps assure the statute serves its purpose without impinging upon the public policy reasons for prohibiting the assignment of personal injury claims. The case law remedy cites no such limitation. *See Marvin's Midtown,* 142 S.W.3d 751. The remedy provided by *Marvin's Midtown* contravenes the statute. Consequently, the statute controls. *See McGhee,* 973 S.W.2d at 849.

The conclusion that the statute is exclusive is supported by an examination of the canons of statutory construction. The fundamental rule of statutory construction is to ascertain the legislature's intent. *Cub Cadet Corp. v. Mopec, Inc.,* 78 S.W.3d 205, 214 (Mo.App. W.D.2002).

> In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by state appellate courts, and that in amending a statute or in enacting a new one on the same subject, it is ordinarily the intent of the legislature to effect some change in the existing law. If this were not so the legislature would be accomplishing nothing, and legislatures are not presumed to have intended a useless act.

*Id.* at 215 (quoting *Sermchief v. Gonzales,* 660 S.W.2d 683, 688–89 (Mo. banc 1983)).

In the present case, the hospital lien statute was amended in 2003. *Kelly,* 351 S.W.3d at 836. If chiropractors could obtain a lien under the common law, adding them to the hospital lien statute would have had no purpose. Consequently, it can be inferred that the statutory remedy was intended to create the right to a statutory lien.

The Western District's opinion in *Marvin's Midtown* does not require a different result. First, the lien in *Marvin's Midtown* was created prior to the 2003 amendment to the hospital lien statute. 142 S.W.3d at 753. In fact, the applicable statutory sections are not cited anywhere in that opinion. *Id.* at 752–55. The remedy allowed in *Marvin's Midtown* was superseded by the statute.

Furthermore, the lien language in *Marvin's Midtown* apparently differed from the language here. As discussed above, in *Marvin's Midtown,* the court found the public policy considerations prohibiting assignment of personal injury claims were not offended by the result in that case because the lien did not grant a right to pursue the claim independently. 142 S.W.3d at 755. That is, the clinic in that case did not have control over the personal injury claim. *Id.* Here, in contrast, the language of the lien provides expansive rights to Meek and purports to bind third parties. The lien provides that insurance companies, attorneys, or anyone who receives money is obligated to pay Meek. It also states the full amount of the claim will be paid directly to Meek. The practical effect of these provisions is to give Meek a measure of control over the claim.

■ The 2003 amendments to the hospital lien statute provide an exclusive remedy for health care providers to seek payment out of the proceeds of the personal injury claims of their patients because those amendments conflicted with prior case law. Because the consensual lien was inconsistent with the statute, the trial court erred in finding the lien to be valid. Huey's first point is granted.

### The Assignment

■ In his second point, Huey argues the assignment was not valid because section 376.427 does not apply to liability insurance policies. We agree.

Section 376.427.2 provides that "[u]pon receipt of an assignment of benefits made by the insured to a provider, the insurer shall issue the instrument of payment for a claim for payment for health care services in the name of the provider." Under that section, the term provider includes a chiropractor. § 376.427.1(4). Nonetheless, by the plain language of the statute, an assignment of benefits does not apply to "other coverages contained in a liability ... policy[.]" § 376.427.1(2). Nothing in the undisputed facts in this case demonstrates Huey is entitled to benefits under any accident or medical-payment policy. The undisputed facts show Huey is seeking recovery on a personal injury claim. The insurance policy that would be involved in such a case would be a liability policy. Hence, section 376.427 does not apply.

Huey's second point is granted.

### Decision

The judgment of the trial court is reversed. Where, as here, the issue presented in competing motions for summary judgment is solely one of law and the motions are intertwined, "the denial of one motion leads directly to the conclusion that the other should be granted." *Lopez v. American Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo.App. W.D.2002). We remand the case with directions to enter judgment in favor of Huey.

DANIEL E. SCOTT, P.J., and DON E. BURRELL, C.J., concur.