DON E. BURRELL, J.
Skaggs Chiropractic, L.L.C. ("Provider") appeals the judgment entered after a trial de novo of a small-claims case. The judgment was "rendered in favor of" Rose Ford ("Patient") in regard to Provider's claim for $5,135.56 in chiropractic services that Provider rendered to Patient for injuries she suffered in a motor vehicle collision.
In the judgment, the trial court found that Provider's trial exhibit 3 (titled "ASSIGNMENT, LIEN, AND AUTHORIZATION [,]" ("the UCC lien") ) was "superseded by the medical lien statute, [s]ection 430.225" as another judge had previously ruled in Patient's separate personal injury suit against the driver of the other vehicle ("the personal injury case").[1] When that previous ruling was made, Provider attempted to appeal it. We dismissed the appeal on the ground "that the 'judgment' " from May 2016 in the personal injury case was "not a final, appealable judgment" because "the judgment appear[ed] to dispose only of [Patient's] 'Motion for Determination of Liens ["lien determination motion"].' " Ford v. Bridwell , No. SD34442 (Mo. App. S.D. Jan. 9, 2017).[2]
In the instant case, although the trial court found that Provider's "care was necessary, ... the amount billed was fair and reasonable[,]" and "the medical lien is less than the amount billed[,]" it nonetheless "decline[d] to" enter any judgment for Provider because it would "be inconsistent with the result in the [personal injury] case." Provider's first point asserts that "[t]he trial court erred in declining to grant judgment for the full amount of [Provider's] bill, because the services rendered were necessary and the bill was fair and reasonable[.]" Provider's second point claims the trial court erred "in determining that the decision in another case was binding in this matter, because the decision in that case is not a final judgment[.]"
Finding merit in Provider's claim that the interlocutory "judgment" in the personal injury case did not require the outcome here, we reverse and remand the case with instructions to stay or dismiss the instant case without prejudice.
Applicable Principles of Review and Governing Law
We will affirm the judgment in a bench-tried case "unless it is not supported by substantial evidence, it is against the *636 weight of the evidence, or it erroneously declares or applies the law." Rowan v. Coves N. Homes Ass'n , 426 S.W.3d 725, 727 (Mo. App. W.D. 2014).
As relevant to the circumstances of this case, the medical lien statute provides that a " '[c ]laim ' ... [is] a claim of a patient for: (a) Damages from a tort-feasor; or (b) Benefits from an insurance carrier[.]" Section 430.225.1(1). A " '[p ]atient ' ... [is] any person to whom a[n] ... other institution delivers treatment, care or maintenance for sickness or injury caused by a tort-feasor from whom such person seeks damages or any insurance carrier which has insured such tort-feasor." Section 430.225.1(6). The term " '[o ]ther institution ' " means "a legal entity existing pursuant to the laws of this state which delivers treatment, care, or maintenance to patients who are sick or injured[.]" Section 430.225.1(5).
The medical lien statute goes on to provide that
[i]f the liens of ... other institutions exceed fifty percent of the amount due the patient, every ... other institution giving notice of its lien, as [provided in section 430.240[3] ] shall share in up to fifty percent of the net proceeds due the patient, in the proportion that each claim bears to the total amount of all other liens of ... other institutions.
Section 430.225.3. The final paragraph of the medical lien statute provides: "Any health care provider electing to receive benefits hereunder releases the claimant from further liability on the cost of the services and treatment provided to that point in time." Section 430.225.5.
Factual and Procedural History
Provider filed the instant case in June 2017. The petition averred that Patient owed $5,135.56 for chiropractic care and "the cost of [Patient's] care is covered by a UCC Lien[.]" The relief sought was "the cost of [Patient's] care to the maximum under Missouri law governing small-claims actions, plus court cost." The associate circuit judge hearing the matter sustained Patient's subsequent motion to dismiss the case, and Provider timely sought a trial de novo. See section 482.365 and Rule 151.01. When the case was assigned to the circuit court, Patient again moved to dismiss Provider's petition on the ground that the personal injury case was "currently ... pending[,]" the personal injury court had ruled "that the lien amount due to [Provider] is $2083.66[,]" Provider filed the instant action "to attempt to circumvent the [personal injury] court's prior ruling[,]" and Provider's claim was "barred by the doctrine of collateral estoppel[.]"
At the October 2017 trial de novo , the parties' attorneys agreed that: (1) Patient suffered injuries as a result of a motor vehicle accident; (2) Provider rendered chiropractic services to Patient to treat those injuries; (3) Provider had not been paid by Patient; and (4) the personal injury case was still pending. Provider's "account statement" was admitted into evidence, and it reflected $4,032.56 in charges and $9.56 in sales tax. Patient's counsel agreed that Provider had not formally intervened as a party in the personal injury case; Provider "appear[ed] ... voluntarily."
Our judicial notice of the records from Provider's unsuccessful attempt to appeal the lien determination ruling in the personal injury case indicates that Patient named the alleged tort-feasor as the sole *637 defendant in that case. In February 2016, Patient filed the lien determination motion, which claimed that three entities (including Provider) had rendered medical services to Patient and that Provider's "pro rata share of the settlement [of the personal injury case] for satisfaction of [Provider's] lien is $2083.66" under the medical lien statute. A hearing was set on the lien determination motion, and counsel for Provider entered an appearance in the personal injury case.
At that hearing, Patient pointed out that she was "not saying [Provider] should not get paid; [it] did provide service to [Patient]. So, we would like to pay [Provider] pursuant to the statute, allow [it] to convert that to a lien under the statute and pay [it] the pro rata portion" under the medical lien law. One of the things Patient "want[ed] to prevent" in the personal injury case was "getting the case settled, [Patient] pay[s] under the lien statute ... and after the fact [Provider] ... goes after ... [Patient.]"
Provider contested efforts "to apply the limits of the healthcare lien law" and argued that "there's been no request by [Provider] for the benefits of hospital lien law[.]" Provider asserted that if the medical lien was found to apply under such circumstances, then "it would violate Article 1, Section 13 of the Missouri Constitution by impairing [Provider's] contract with [Patient]."
The personal injury court inquired about Provider's actions concerning a lien in the following exchange.
BY THE [PERSONAL INJURY] COURT: Did [Provider] file a lien in this case?
BY [PATIENT'S COUNSEL]: That's what I gave you, the UCC which is not valid.
BY [PROVIDER'S COUNSEL]: May I see the Exhibit?[4]
BY THE [PERSONAL INJURY] COURT: You may.
BY [PROVIDER'S COUNSEL]: We have the same one. If the Court likes I have a copy of it that I would be glad to give to the Court. There is actually a UCC filing in this case.
BY THE [PERSONAL INJURY] COURT: Was there anything filed in this case?
BY [PROVIDER'S COUNSEL]: Not in this case. [Provider] has filed a notice of lien under the Uniform Commercial Code with the Secretary of State.
BY [PATIENT'S COUNSEL]: Which is unenforceable.
BY [PROVIDER'S COUNSEL]: I would tender it to the Court, although it's not marked.
BY THE [PERSONAL INJURY] COURT: All right. It's admitted.
*638 BY [PROVIDER'S COUNSEL]: I do have a follow-up thought.
BY THE [PERSONAL INJURY] COURT: All right. Go ahead.
BY [PROVIDER'S COUNSEL]: The suggestion that there's not any lien; that's incorrect, we're just not claiming the hospital lien. What we can do in this case, [sic] if the Court determines that there is a hospital lien and reduces the amount [Provider] cannot then pursue a civil action against the Plaintiff and that's the problem in this case if there's not any lien.
We suggest there is but there's not one before the Court to be decided. If there's not any lien there's no reason [Provider] can't [sic] the [Patient] for the full amount of [Provider's] bill. But if you find that there is a hospital lien that [Provider] has never requested that the [Patient] specifically disclaim you reduce what [Provider] can ultimately collect under any circumstance. And that's when we're into constitutional problems.
Patient's counsel argued:
[T]he law is clear that the exclusive remedy under Missouri law if you want a lien for medical providers is the Missouri lien statute.... So, a UCC lien is not valid. I'm not clear are they saying there is a lien or there's not a lien? They can't have it both ways.
The personal injury court found "that this case does not differ from the case of [ Huey v. Meek , 419 S.W.3d 875, 876 (Mo. App. S.D. 2013),]" and ruled that "the lien amount due to [Provider] is in the amount of $2,083.66."
At the trial de novo in the instant case, Patient's counsel informed the trial court that she thought the lien issues had been resolved in the personal injury case but acknowledged that a final judgment had not been rendered in that case. Provider's counsel agreed that there was "not a final judgment yet" in the personal injury case, but he insisted that Provider was "entitled to ... the entire amount of the service that [it] rendered."
Provider maintained that the UCC lien was "foreign to the issue that [the trial court was] called upon to decide" because "collectibility of [the underlying] debt is a separate issue[,]" and the small-claims action was not "a collection proceeding[.]" Provider's counsel argued that if the UCC lien was an "illegal" lien, that was "fine[,]" but there was "still the underlying debt." Provider maintained that
there is nothing in [ Huey ] that says the chiropractor cannot reserve his bill not collected through-under the hospital lien statute and instead just proceed it [sic] as an ordinary civil judgment creditor, which is exactly the position that we would like to be in.
Patient maintained that as for Provider's small-claim action, the medical "lien statute is exclusive and that controls how much should be paid." Patient's counsel further argued that if the trial court awarded Provider "the full amount" of Provider's account statement, then there would be an inconsistent result with the ruling on the lien determination motion in the personal injury case.
The trial court took the matter under advisement and subsequently entered the judgment described above. The judgment also agreed that Huey controlled the outcome in the instant case. This appeal timely followed.
Analysis
The core premise of Point 2 is "the decision in [the personal injury] case is not a final judgment" on the key issue of whether the medical lien statute controls the liability of Patient for Provider's services *639 in the instant case.[5] Patient disputes the necessity of a final judgment for purposes of collateral estoppel, but the principle is well-settled. "Collateral estoppel involves the determination of an issue of ultimate fact by a valid and final judgment." Williams v. Southern Union Co. , 364 S.W.3d 228, 233 (Mo. App. W.D. 2011) (quotation omitted).
Thus, the doctrine of collateral estoppel does not apply here, and the trial court's judgment may not be upheld on that ground. While "[t]his court will affirm the judgment on different grounds if the trial court reached the correct result but for the wrong reason[,]" Doe v. St. Louis Cmty. Coll. , 526 S.W.3d 329, 335 (Mo. App. E.D. 2017), we do not determine whether the judgment could be upheld based upon the principles announced in Huey .
Although Patient is incorrect in claiming that the ruling on the lien determination motion in the personal injury case collaterally estopped Provider from pursuing its instant action, Patient's motion to dismiss and the parties' arguments at the trial de novo were sufficient to inform the trial court of the overlap between the two cases so as to trigger application of the abatement doctrine. Cf. Allen v. Titan Propane, LLC , 404 S.W.3d 914, 916-17 (Mo. App. S.D. 2013) (a motion to dismiss based on res judicata and collateral estoppel did not justify a dismissal with prejudice where the prior case had not resulted in a final judgment, but the motion "was sufficient to apprise the court" of the prior action, thereby making the second action "subject to dismissal without prejudice pursuant to the doctrine of abatement").
The abatement doctrine is "also known as the pending action doctrine[.]" Coverdell , 483 S.W.3d at 401 (quotation omitted). The abatement doctrine "holds that where a claim involves the same subject matter and parties as a previously filed action so that the same facts and issues are presented, resolution should occur through the prior action and the second suit should be dismissed." Golden Valley Disposal, LLC v. Jenkins Diesel Power, Inc. , 183 S.W.3d 635, 641 (Mo. App. S.D. 2006) (quotation omitted). The dismissal is without prejudice, and an approved alternative disposition to such a dismissal is to stay the second action. See Sherman v. Missouri Professionals Mutual-Physicians Prof'l Indem. Ass'n (MPM-PPIA) , 516 S.W.3d 867, 870 (Mo. App. W.D. 2017).
Generally, "the object, purpose and principles of law raised in the two actions must be the same[,]" Coverdell , 483 S.W.3d at 404 (quotation omitted), but it is not required that the cases "absolutely mirror one another." Id. at 403-04. Rather, "abatement may apply to the duplicated claims even if all claims in the two cases do not match." Id. at 404. Additionally, "[e]xtraneous parties to the action do not preclude dismissal when determining if there is sufficient commonality to warrant abatement." State ex rel. Dunger v. Mummert , 871 S.W.2d 609, 610 (Mo. App. E.D. 1994). Despite the fact that Provider voluntarily appeared in the personal injury case, that case involves another party (the alleged tort-feasor), and the posture in which Provider asserts its claims differ, there is nonetheless sufficient overlap to trigger the abatement doctrine. In both cases, *640 both parties contest the applicability of the medical lien statute and its impact upon Provider's claim against Patient.
Section 430.225.5 provides that the "electi[on] to receive benefits [under the medical lien statute] releases the claimant[6] from further liability on the cost of the services and treatment provided to that point in time." (Emphasis added.) Given this statutory constraint, whether Provider had irrevocably elected to assert a medical lien by filing the UCC lien was critical both to the determination of the amount of such lien for purposes of the lien determination motion and to determine whether Patient owes the full amount billed by Provider for its services as averred in the instant case.
We therefore reverse the judgment and remand the case to the trial court to either stay the instant action or dismiss it without prejudice.
OPINION ON MOTION FOR REHEARING OR TRANSFER
After this court's opinion was issued, Provider filed a timely motion for rehearing and alternative application for transfer. See Rules 83.02 and 84.17(b). In both motions, Provider contends, inter alia , that this court did not address the requirement in Rule 55.27(g)(1)(F)[1] that a defense is waived if it is not raised in a motion or responsive pleading. The motion for transfer also asserts that our decision in the instant case is contrary to Benchmark Healthcare of Wildwood, LLC v. Whispering Oaks Residential Care Facility, LLC , 417 S.W.3d 767 (Mo. App. E.D. 2013), and In re Marriage of Bradford , 557 S.W.2d 720 (Mo. App. S.D. 1977).[2]
Here, the personal injury case is not the same cause of action as the instant action on account. Instead, as noted earlier in our opinion, the circumstances are similar to *641 Allen v. Titan Propane, LLC , 404 S.W.3d 914, 917 (Mo. App. S.D. 2013), in which the defendants' motion to dismiss relied on the doctrines of collateral estoppel and res judicata , but we found those assertions were nonetheless "sufficient to support a dismissal without prejudice on [the] different ground" of abatement.[3]
More fundamentally, the concept of waiver under Rule 55.27(g) applies to a party's ability to rely upon a certain defense. The abatement doctrine, however, "also operates to forestall the possibility of inconsistent judgments on the same claim." State ex rel. City of Springfield, Through Bd. of Pub. Utilities v. Conley , 760 S.W.2d 948, 950 (Mo. App. W.D. 1988). A party has no ability to "waive" this court's authority to address its own prudential concern about the possibility of inconsistent judgments. Cf. In re KCP & L Greater Mo. Operations Co. , 408 S.W.3d 175, 188 n.17 (Mo. App. W.D. 2013) (the appellate court also aims to avoid decisions which may result in "wasteful duplication and inconsistent judgments") (internal quotation and citation omitted).
Provider's motion for rehearing is denied. We also decline Provider's application for transfer as our high court "always carefully considers a Rule 83.04 application and will order transfer if it sees fit." China Worldbest Grp. Co., Ltd. v. Empire Bank , 373 S.W.3d 9, 17 (Mo. App. S.D. 2012).
MARY W. SHEFFIELD, P.J.-CONCURS
GARY W. LYNCH, J.-CONCURS

We will use "personal injury court" simply as a means of distinguishing proceedings in the personal injury case from trial court actions in the instant case. All statutory references are to RSMo 2016, and all rule references are to Missouri Court Rules (2017).

We may take judicial notice of our own appellate records in a related case "as necessary to provide a more complete understanding of the context of the [appeal] addressed in this case." U.S. Bank, N.A. v. Coverdell , 483 S.W.3d 390, 392 n.2 (Mo. App. S.D. 2015). Orders entered by this court in the attempted appeal from the personal injury case indicate that there had been no final disposition of Patient's claim against the person allegedly operating the other motor vehicle ("the alleged tort-feasor").

Other institutions "have the same rights granted to hospitals in sections 430.230 to 430.250." Section 430.225.2. "No such lien shall be effective, however, unless a written notice" conforming to the particular requirements of section 430.240 is provided.

Provider's Exhibit A, a copy of its bill to Patient, had already been admitted into evidence. The transcript does not reflect the specific identification of another exhibit, but the legal file includes "Exhibit No. Plts. 1" ("Exhibit 1") as being filed in the trial court on the day of the hearing on the lien determination motion. The relevant docket entry reflects that "[e]xhibits filed in open court" were "[s]canned in and mailed back to each party." Exhibit 1 consists of two pages, with the first page entitled "Assignment & UCC Lien: [,]" and the second page appearing to be a copy of the UCC lien admitted into evidence in the instant case-except for multi-colored highlighting of some text on the UCC lien. We make no factual findings regarding Patient's execution of Exhibit 1 or the UCC lien. Cf. Black River Elec. Coop. v. People's Cmty. State Bank , 466 S.W.3d 638, 640 (Mo. App. S.D. 2015) (a fact-finder may disbelieve "all or any part of the evidence" or refuse to draw a particular inference from the evidence) (internal quotation omitted). We describe these exhibits solely to provide context for the claims asserted in the personal injury case and the instant case.

Point 2 is deficient in that it does not explain the challenged ruling and legal reasons "in the context of the case[.]" Rule 84.04(d)(1)(C). Nonetheless, "we have the discretion to review non-compliant briefs ex gratia where the argument is readily understandable[,]" Brown v. Brown , 530 S.W.3d 35, 40-41 (Mo. App. E.D. 2017), and we do so here.

Based on section 430.225.1(1) and (6), we understand "claimant" to be the "patient" who brought a claim as described in these sections.

Provider cites "Rule 55.27(g)(1)(b)" in both motions. This particular subsection does not exist, but we understand from the context of Provider's arguments that it is referring to Rule 55.27(g)(1)(F) so as to maintain that "[a] defense of ... [t]hat there is another action pending between the same parties for the same cause in this state ... is waived if it is ... [n]either made by motion ... nor included in a responsive pleading."

In Benchmark Healthcare of Wildwood , a nursing home sought relief against a neighboring residential care facility concerning "an easement agreement signed by previous owners of the land." 417 S.W.3d at 769. In a separate case, the Missouri Department of Natural Resources sued the residential care facility "for violations of the Missouri Safe Water Drinking Act[,]" and the nursing home moved to intervene in order to seek "a receivership over the property." Id. at 768-69. The nursing home obtained a default judgment against the residential care facility concerning the easement. Id. at 769. One of the residential care facility's points on appeal was that "the court lacked subject matter jurisdiction in that another action was pending between the same parties for the same cause in [another division of the trial court]." Id. at 771. The point was denied because the residential care facility "did not make the proper motion or include this defense in a responsive pleading" and therefore "waived this defense." Id.
In Bradford , separate actions to dissolve a marriage were filed the same day, one in Missouri and another in Louisiana. 557 S.W.2d at 722. But "because the return was deficient, the service of process was not effective to confer personal jurisdiction of the respondent upon the Missouri court, and defendant did not waive the defense of lack of personal jurisdiction by failing to raise that defense by timely motion." Id. at 729. These cases are of no help to Provider because a lack of subject matter or personal jurisdiction in the trial court is not at issue in the instant case.

Patient identified the doctrine at issue as being "collateral estoppel" instead of "abatement[,]" but it is very plain that Patient informed the trial court that the personal injury case was pending where Provider had claimed that it was "not bound by Missouri's lien statute[.]" Patient also alleged that Provider "filed [the instant case] to attempt to circumvent the trial court's prior ruling" in the personal injury case. "It was not necessary for" Patient's motion to dismiss "to expressly rely on Rule 55.27(a)(9) [which provides that the defense of another pending action may be raised by motion] in order to present the abatement issue to the trial court." U.S. Bank, N.A. v. Coverdell , 483 S.W.3d 390, 403 (Mo. App. S.D. 2015). In general, citation of a specific rule is not required for consideration of the allegations of a motion, see Blue Ridge Bank & Trust Co. v. Hart , 152 S.W.3d 420, 425 (Mo. App. W.D. 2005), and we will not exalt such form over substance regarding Rule 55.27(g)(1)(F) when, as we discuss infra , the issue is broader than whether a party has waived a particular defense.