Colleen Dolan, J.
George R. Schoedinger, III, M.D. ("Appellant") appeals the trial court's grant of summary judgment in favor of John Beck ("Respondent"), a licensed Missouri attorney, in an action for account stated and breach of contract. In the underlying action, Appellant sought to recover amounts owed for medical treatment he rendered to Respondent's client, Jason Hunter ("Hunter"), who was injured in a car accident. Before Appellant treated Hunter, the parties signed a document entitled "Guaranty" (the "Guaranty") which purported to grant Appellant a lien on any settlement proceeds Hunter would recover from the liable driver. Upon settling Hunter's case, Respondent sent partial payment for the costs of medical services billed to Hunter and explained that Appellant's failure to file a hospital lien barred him from recovering the full amount billed to Hunter through the settlement proceeds. Consequently, Appellant filed a three-count petition against Respondent and Hunter for the remaining amount due to him. The trial court awarded summary judgment in favor of Respondent, finding the rationale of Huey v. Meek , 419 S.W.3d 875 (Mo. App. S.D. 2013) to be determinative. Appellant's sole point on appeal is that the trial court erred in granting Respondent's motion for summary judgment because the Guaranty entered into by both parties is ambiguous. Specifically, Appellant argues that a genuine issue of material fact exists about the intended effect of the Guaranty because it can be construed as a direct cause of action against Respondent personally or as a lien on the settlement proceeds of Hunter.
We affirm the judgment of the trial court.
I. Factual and Procedural Background
After being injured in a car accident, Hunter sought treatment from Appellant, *533 a medical doctor. Appellant treated Hunter for his injuries from September through November of 2012. Appellant billed Hunter for the total costs of the medical services rendered, which totaled $59,375.00.
In addition to seeking medical treatment, Hunter also retained Respondent as his attorney to represent him in an action to recover damages for personal injuries arising out of the aforementioned car accident from the liable driver. Prior to treating Hunter, Appellant drafted and presented the Guaranty to Respondent, and both parties signed the agreement. Hunter was not a party or signatory to the Guaranty. The Guaranty granted Appellant "a lien on any proceeds of settlement in [Hunter's] case after payment of attorney's fees...." Upon Respondent settling the case against the liable driver on Hunter's behalf, Respondent provided notice of Hunter's settlement and submitted payment to Appellant in the amount of $39,901.15. Appellant contended that, per the Guaranty, he was owed the full payment of $59,375.00, and therefore requested payment for the unpaid amount of $19,455.85. Respondent explained in a letter to Appellant that § 430.225 was the framework for his calculations and the payment of $39,901.15 reflected "an amount which [co-counsel] and I feel is fair."[1] Respondent further clarified in several communications that Appellant was not entitled to the full amount charged because he did not file a medical lien pursuant § 430.225, and since he "did not have any liens, Mr. Hunter had the option to not pay [him] anything." Pursuant to § 430.225, Respondent satisfied all other liens of additional healthcare providers who treated Hunter.
After Respondent continuously refused to make the additional payment, Appellant filed a three-count petition against Respondent and Hunter; Appellant asserted claims of breach of contract against Respondent, quantum meruit against Hunter, and account stated against both Respondent and Hunter. Appellant later voluntarily dismissed Hunter from the lawsuit. Appellant filed a motion for summary judgment alleging that, pursuant to the Guaranty, Appellant was due the additional $19,455.85 for the medical services provided to Hunter. Respondent filed an affidavit in opposition to summary judgment stating he never intended to become personally liable under the Guaranty for the payment of the medical services rendered by Appellant. The trial court denied Appellant's motion based on the holding in Huey, 419 S.W.3d at 875. Appellant filed a motion for reconsideration, which the trial court denied on the same basis.
After Appellant's motion for summary judgment was denied, Respondent filed a motion for summary judgment arguing that § 430.225, as applied in Huey , controlled all issues before the court and preempted the Guaranty. Appellant responded that the claim survived summary judgment because the language of the Guaranty was ambiguous since it could be interpreted as a lien on the proceeds of Hunter's settlement or as a guarantee that Respondent would be personally liable for the debt. After considering the parties' arguments, the trial court granted Respondent's motion. In its judgment, the trial court found Huey to be determinative. Further, in addressing whether the Guaranty was ambiguous, the court held that "when construing the purported ambiguities against the drafter the court finds that *534 the Guaranty was an attempt to create a consensual lien on the proceeds of the settlement of the underlying personal injury case."
This appeal follows.
I. Standard of Review
The standard of review for a trial court's decision granting a motion for summary judgment is essentially de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). "Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 119-20 (Mo. banc 2010) ; Rule 74.04(c)(6). "A 'genuine issue' that will prevent summary judgment exists where the record shows two plausible, but contradictory, accounts of the essential facts and the genuine issue is real, not merely argumentative, imaginary, or frivolous." Hibbs v. Berger , 430 S.W.3d 296, 305 (Mo. App. E.D. 2014). "A fact is 'material' if "it has legal probative force as to a controlling issue in the litigation." Wilson v. Union Pac. R.R. Co., 509 S.W.3d 862, 869 (Mo. App. E.D. 2017). Our Court reviews "the record in the light most favorable to the non-moving party and afford[s] that party the benefit of all reasonable inferences." Phillips v. Drury Sw., Inc., 524 S.W.3d 228, 230 (Mo. App. E.D. 2017).
II. Discussion
Appellant's sole point on appeal is that the trial court erred in entering summary judgment in favor of Respondent because a genuine issue of material fact exists about the intended effect of the Guaranty. Appellant argues that the Guaranty is ambiguous because it can be construed as a direct cause of action against Respondent personally or as a lien on the settlement proceeds of Hunter. Appellant's argument does not have merit because the Guaranty is preempted by § 430.225, and is not ambiguous.
A. The Guaranty is not a valid lien on the settlement proceeds
Before addressing Appellant's assertion that the Guaranty is ambiguous because it reads to have a dual interpretation, it is essential to provide a background as to what share of costs healthcare providers are entitled to receive under Missouri statutes. Sections 430.225 to 430.250 establish the procedures hospitals and health practitioners must follow to secure a lien to recover amounts due for medical services rendered to a person injured by a tort-feasor. Section 430.230 specifically established that healthcare providers that render medical services to persons injured as the result of another's negligence or wrongful act shall have a lien on any and all claims the injured person may assert against the persons or persons who caused said injury. § 430.230. The statute was "designed with a dual purpose: to ensure that injured patients are quickly treated without first considering if the patients are able to pay and to protect healthcare providers financially so that they could continue to provide care." Kelly v. Marvin's Midtown Chiropractic, LLC, 351 S.W.3d 833, 835 (Mo. App. W.D. 2011). To that end, "[t]he statute allows certain hospitals and clinics to file liens[2] against patients and participate in the recovery of any personal *535 injury claim that the patient may have in order to recoup payment for services." Id. (citing SSM Cardinal Glennon Children's Hosp. v. State , 68 S.W.3d 412, 414 (Mo. banc 2002) ); §§ 430.230 to 430.250. However, § 430.225 limits the amount that healthcare providers may recover from the person injured by another's negligence or wrongful act. Section 430.225 states that, if healthcare provider liens exceed fifty percent of the amount recovered by the injured person, the providers "shall share in up to fifty percent of the net proceeds due the patient, in the proportion that each claim bears to the total amount of all other liens of [healthcare providers]." § 430.225.3.
In the present case, Appellant drafted and submitted to Respondent the Guaranty that, by its plain language, granted Appellant a "lien on any proceeds of settlement in [Hunter's] case after payment of attorney's fees." After settling Hunter's case, Respondent provided notice to Appellant and rendered payment, on behalf of Hunter, in the amount of $39,901.15. Even though Appellant did not file a lien pursuant to §§ 430.230 and 430.240, Respondent still paid him, out of Hunter's settlement proceeds, an amount equal to the statutory limitation for the costs of the medical services he provided. On appeal, Appellant argues that the trial court's grant of summary judgment was erroneous because the Guaranty was "ambiguous" as to whether the Guaranty was a consensual lien or a guarantee that attempted to make Respondent personally liable. Regardless, we find that it is preempted by statute.
In McGhee v. Dixon , 973 S.W.2d 847, 849 (Mo. banc 1998), the Supreme Court of Missouri held that when a remedy provided in a statute conflicted with a remedy provided under case law, the statutory remedy controlled. In the context of medical consensual liens, Huey applied McGhee to resolve the conflict of whether healthcare providers can contract for more than the statutory share of costs for healthcare services provided in § 430.225. Huey , 419 S.W.3d at 880-81. Like in the present case, Huey involved a physician who intended to secure payment for the costs of medical services from settlement proceeds via a consensual lien. Id. at 877. The consensual lien in Huey specified that the lien should "be the full and exact amount necessary to pay the reasonable charges for the necessary treatment of [Huey's] injuries rendered by [Meek], up to the amounts of the proceeds." Id. at 877. However, § 430.225.3 provides that the total of all healthcare providers' liens is limited to no more than 50 percent of the amount due to the patient. Id. at 881. The court in Huey held that, although consensual liens are allowed pursuant to case law, the physician's lien agreement in that case was preempted by § 430.225 since its terms conflicted with the statutory remedy; it excluded the limitation on recovery if the lien exceeded 50 percent of the value remaining after attorney fees and expenses as provided by § 430.225. Id. at 881. The court applied the reasoning from McGhee and held that § 430.225 provided the exclusive remedy for healthcare providers to seek payment from the proceeds of the personal injury claims of their patients because § 430.225 conflicted with prior case law. Id. at 881. Thus, because the consensual lien was inconsistent with the statute, the court found that the trial court erred in finding the lien to be valid. Id.
As in Huey , where the court found that the lien statute contained limitations that were not contained in the consensual lien, here, § 430.225.3 limits the total amount that all healthcare providers may collect from Hunter's settlement in satisfaction of their liens to no more than 50 percent of *536 the settlement. Since no such limitation is contained in the Guaranty, the Guaranty is preempted by § 430.225. By not availing himself of § 430.225, Appellant risked not receiving any payment from the settlement proceeds, but still received the amount he would have received had he complied with § 430.225.
In all, Appellant's Guaranty, which attempts to contract for the full amount of the cost of medical services provided to Hunter be paid out of Hunter's settlement amount is superseded by § 430.225.
B. The Guaranty is not ambiguous
Appellant contends that the terms of the Guaranty are in fact ambiguous because the Guaranty can be interpreted as a lien on the proceeds of Hunter's settlement or as a guarantee that Respondent would be personally liable for the debt. However, Appellant ignores that, as the drafter of the Guaranty, any ambiguous language in the contract will be construed against him. See J.H. Berra Constr. Co. v. City of Washington , 510 S.W.3d 871, 876 (Mo. App. E.D. 2017).
"The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Dunn Indus. Group, Inc. v. City of Sugar Creek , 112 S.W.3d 421, 428 (Mo. banc 2003). We read the contract as a whole to determine the intent of the parties and give the terms used their plain and ordinary meaning. Id. Where the parties have expressed their final and complete agreement in writing and there is no ambiguity in the contract, the intent of the parties must be determined solely from the four corners of the contract itself. Mid Rivers Mall, L.L.C. v. McManmon , 37 S.W.3d 253, 255 (Mo. App. E.D. 2000). "An ambiguity arises when, from the four corners of the contract alone, it appears that the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." Eveland v. Eveland , 156 S.W.3d 366, 369 (Mo. App. E.D. 2004). "The ambiguity must appear from the four corners of the contract-extrinsic evidence cannot be used to create an ambiguity." Erwin v. City of Palmyra , 119 S.W.3d 582, 585 (Mo. App. E.D. 2003).
Appellant argues that Eveland is analogous to the present case, however, we find that it does not support Appellant's argument. In Eveland , a husband and wife separated and entered into an agreement under which the husband would pay the wife $800 a month upon his retirement. Eveland, 156 S.W.3d at 368. Our Court was faced with deciding whether the separation agreement was ambiguous as to the reference of an $800 monthly payment. Id. at 368-69. We found the separation agreement to be ambiguous because it was reasonably susceptible of more than one meaning since, on its face, the agreement referred to the $800 monthly payment both as maintenance and as division of property. Id. at 369.
Unlike in Eveland , where there was ambiguity as to whether the $800 payment would account as maintenance or as a division of property, here the Guaranty's plain language clearly grants "a lien on any proceeds of settlement in [Hunter's] case after payment of attorney's fees." When examining the four corners of the Guaranty, it is apparent that Appellant was attempting to secure payment through Respondent, on behalf of Hunter, from the "proceeds of the settlement" for the cost of medical services associated with Hunter's personal injuries. Therefore, the Guaranty was directed at the "proceeds of settlement" in Hunter's personal injury case, not Respondent personally. There is no language within the four corners of the Guaranty which would make it apparent *537 that "the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." Id. at 369. Lastly, in Eveland there was no controlling statute limiting the amount that the parties could contract for and there was an obvious ambiguity as to whether the $800 monthly payment was maintenance or a division of property. In the present case, there is no ambiguity that the payment called for in the Guaranty was for the cost of Hunter's medical services which would be made from the proceeds of his personal injury settlement and not from Respondent personally.
Therefore, when read as a whole and given the terms their plain and ordinary meaning, the Guaranty is not ambiguous.
III. Conclusion
The trial court's summary judgment granted to Respondent is affirmed.
Kurt S. Odenwald, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

All statutory references are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

For a lien to be effective, § 430.240 mandates that "a written notice ... shall be sent by certified mail with return receipt requested to the person or persons ... alleged to be liable to the injured party, if known, for the injuries sustained prior to the payment of any moneys to such injured person, his attorneys or legal representative, as compensation for such injuries...." Appellant did not file notice of a lien pursuant to § 430.240.