

## Missouri Court of Appeals
### Southern District
### Division One

HYEWON ("HELEN") KIM, M.D.,    )
                              )
    Plaintiff-Respondent,    )
                              )
and    )
                              )
MERCY CLINIC SPRINGFIELD    )
COMMUNITIES,    )
                              )
    Defendant-Respondent,    )
                              )
vs.    )    No. SD35857
                              )
STATE OF MISSOURI,    )    FILED: November 12, 2019
                              )
    Intervenor-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown

AFFIRMED

The State of Missouri appeals the trial court's judgment denying its petition to enforce a

section 537.675[1] lien, for deposit into the Tort Victims' Compensation Fund ("TVCF"), that the

State purports to have on punitive damages that were awarded during the course of the

underlying litigation between Dr. Hyewon Kim ("Dr. Kim") and Mercy Clinic Springfield

Communities ("Clinic") (Dr. Kim and Clinic are collectively referred to as "Respondents").

---

[1] All Missouri statutory references are to RSMo 2016.  All rule references are to Missouri Court Rules (2019).

1

Because this case was resolved by compromise settlement prior to a "punitive damage final judgment," as that phrase is expressly, clearly, and plainly defined in section 537.675.1(4), section 537.675.3 expressly exempts this case from the provisions of section 537.675. We, therefore, affirm the trial court's judgment.

## Factual and Procedural Background

The genesis of the underlying litigation was an employment-termination dispute between Dr. Kim, a radiation oncologist, and Clinic, Dr. Kim's former employer. Dr. Kim filed a petition alleging, *inter alia*, that Clinic retaliated against her and constructively discharged her after she reported instances of substandard medical treatment and Medicare fraud. Clinic denied Dr. Kim's allegation in its answer and filed counterclaims alleging Dr. Kim breached her employment contract and unjustly enriched herself during her employment.

Respondents proceeded to trial. On Dr. Kim's constructive discharge claim, a jury found in favor of Dr. Kim, awarding her $720,821.00 in compensatory damages and $800,000.00 in punitive damages ("the punitive damage award"). On Clinic's claim for unjust enrichment, the trial court, in a separate proceeding, found in favor of Clinic, awarding it $63,094.00. Judgments were entered in conformity with these findings (collectively referred to as "the underlying claims judgment").

Respondents thereafter timely cross-appealed the underlying claims judgment. This court consolidated the appeals and affirmed that judgment in all respects by published opinion in *Kim v. Mercy Clinic Springfield Communities*, 556 S.W.3d 613 (Mo.App. 2018). A subsequent motion for rehearing and an application for transfer to the Supreme Court of Missouri, filed by Clinic, were denied.[2]

---

[2] The motion for rehearing and application for transfer were not submitted on appeal as part of the legal file. However, this court can "take judicial notice of our own appellate records in a related case 'as necessary to provide a

2

Clinic then timely filed an application for transfer directly with the Supreme Court of Missouri, which was assigned case number SC96999. On May 1, 2018, the Supreme Court of Missouri denied transfer. This court subsequently entered, on the following day, its mandate affirming the underlying claims judgment.

A few weeks later, the State filed a "<u>NOTICE OF LIEN</u>" ("the lien notice") in the trial court in this case, stating, "Pursuant to § 537.675.3, RSMo, the State of Missouri files and gives notice of its lien for fifty (50) percent of the punitive damage final judgment entered in this cause for deposit into the Tort Victims' Compensation Fund."

On June 26, 2018, Respondents entered into a "SETTLMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS" ("the settlement agreement"), which purported to resolve all underlying claims between Respondents at issue in the case.

Thereafter, the State filed a motion to intervene in the trial court case and, on the following day, filed a petition seeking to enforce the lien notice. Respondents filed "Suggestions in Opposition" to the State's petition.[3] Following a hearing, the settlement agreement was submitted to the trial court for in-camera review.

The trial court issued a judgment denying the State's petition ("the lien petition denial judgment"). In that judgment, the trial court concluded that there was no "punitive damage final judgment" because June 26, 2018, the date the settlement agreement was executed, was within the ninety-day period for filing a petition for writ of certiorari to the Supreme Court of the United States ("SCOTUS").

---

more complete understanding of the context of the [appeal] addressed in this case.'" ***Skaggs Chiropractic, L.L.C. v. Ford***, 564 S.W.3d 633, 635 n.2 (Mo.App. 2018) (alteration in original) (quoting ***U.S. Bank, N.A. v. Coverdell***, 483 S.W.3d 390, 392 n.2 (Mo.App. 2015)).

[3] No party raises any issue as to the form or manner of the court filings below or the procedure followed by the trial court culminating in the entry of the lien petition denial judgment.

3

The State timely appeals the trial court's lien petition denial judgment, raising two points of asserted trial court error: (1) under the plain and ordinary language of section 537.675, "a 'punitive damage final judgment,' as defined by statute, existed when the State asserted its lien, in that the [underlying claims judgment] was no longer 'subject to review' by any state or federal court at the time the parties entered into their post-judgment settlement[;]" and (2) if "the phrase 'no longer subject to review' in that statute is vague or ambiguous, which [the State] denies, public policy mitigates in favor of enforcing the State's lien." Our resolution of the State's first point is dispositive.

### Applicable Principles of Review and Governing Law

"The proper interpretation of a statute is a question of law we review *de novo*." ***State v. Spradling***, 413 S.W.3d 670, 673 (Mo.App. 2013). "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." ***State v. Graham***, 204 S.W.3d 655, 656 (Mo. banc 2006). "In order to ascertain the intent of lawmakers, undefined words are given their plain and ordinary meaning as found in the dictionary." ***Dodson v. City of Wentzville***, 216 S.W.3d 173, 177 (Mo.App. 2007). "We particularly look to whether the language is clear and plain to a person of ordinary intelligence." ***State v. Acevedo***, 339 S.W.3d 612, 617 (Mo.App. 2011). "We may not create an ambiguity where the words of a statute are plain." ***State v. Downing***, 359 S.W.3d 69, 71 (Mo.App. 2011). "Statutory construction should be reasonable and logical." ***Id.*** "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result that defeats the purpose of the legislation." ***Ivie v. Smith***, 439 S.W.3d 189, 202 (Mo. banc 2014).

The statutory provisions at issue are contained in section 537.675 and provide, in pertinent part, that the State "shall have a lien for deposit into the tort victims' compensation

4

fund to the extent of fifty percent of the *punitive damage final judgment* which shall attach in any such case after deducting attorney's fees and expenses." Section 537.675.3 (emphasis added). However, "[t]he state cannot enforce its lien until there is a *punitive damage final judgment*[,]" and "[c]ases resolved by arbitration, mediation or compromise settlement prior to a *punitive damage final judgment* are exempt from the provisions of [section 537.675]." **Id.** A "punitive damage final judgment" is defined as "an award for punitive damages excluding interest that is no longer subject to review by courts of this state or of the United States[.]" Section 537.675.1(4).

### Discussion

All parties agree that the crux of this dispute concerns the definition of "punitive damage final judgment"; specifically, the meaning of the phrase "no longer subject to review" ("the subject-to-review phrase") as applied to the context of review by "courts . . . of the United States[.]" *See* section 537.675.1(4). It is uncontested that following the Supreme Court of Missouri's denial of Clinic's motion for transfer, the punitive damage award was no longer subject to review by "courts of this state[.]" It is further uncontested that SCOTUS is the only federal court that may hear appeals from a state court of last resort, *see* 28 U.S.C. §1257, and that such an appeal may be sought through the filing of a petition for a writ of certiorari within ninety days after the state judgment is entered and petitions for rehearing or further review are denied, *see* SUP. CT. R. 13.

In its first point, the State asserts that SCOTUS had no jurisdiction to hear and consider an appeal from the underlying claims judgment because none of the issues raised therein involved a "federal question."[4] Therefore, according to the State, the underlying claims

---

[4] To define what constitutes a federal question, the State quotes 28 U.S.C. § 1257(a), which provides, in pertinent part, that

5

judgment, including the punitive damage award, was "no longer subject to review" by SCOTUS in that it was *never* subject to such review.

Respondents assert that the presence or absence of subject-matter jurisdiction is irrelevant to the application of the subject-to-review phrase. According to Respondents, *the deadline* for filing a petition for a writ of certiorari controls whether the underlying claims judgment was "no longer subject to review" by SCOTUS.

The words comprising the subject-to-review phrase are not defined in section 537.675. Therefore, we turn to the dictionary to determine the plain and ordinary meaning of those words. *See **Dodson***, 216 S.W.3d at 177.

> We begin with the State's proffered definitions for the word "review":
>
> "1. To look over, study, or examine again. 2. To consider retrospectively; look back on. 3. To examine with an eye to criticism or correction. 4. An inspection or evaluation for the purpose of examining something. 5. Law. To examine (an action or determination), esp. in a higher court in order to correct possible errors." *Review*, American Heritage Dictionary, (2d College ed. 1991). Black's Law Dictionary defines the term similarly – "1. Consideration, inspection, or reexamination of a subject or thing. . . . - appellate review: Examination of a lower court's decision by a higher court, which can affirm, reverse, modify, or vacate the decision." *Review*, Black's Law Dictionary (10th ed. 2014).

The State asserts that "[e]ach of these definitions contemplates a substantive analysis of a subject or thing." The State then concludes that, without subject-matter jurisdiction, an appeal of an

---

[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

Respondents assert that the underlying claims judgment did involve a federal question, contrary to the State's argument otherwise, in the form of allegations by Dr. Kim against Clinic of Medicare fraud. Because we resolve this case on grounds separate and apart from the issue of whether a federal question was raised in the proceedings below, we need not address the issue further.

award for punitive damages to SCOTUS would end at the petition for a writ of certiorari and, therefore, there would be no *substantive* review. As the State puts it, "the subject or thing modified by the phrase 'no longer subject to review' is the *actual judgment* rendered by the trial court, and not a writ of certiorari or other instrument by which a putative appellant seeks review of that judgment." In other words, according to the State, the review of a petition for a writ of certiorari does not qualify as "review" within the meaning of section 537.675.1(4).

The State's argument is not persuasive. First, the State fails to take the entirety of the subject-to-review phrase into account. Proceeding in the proper manner, we begin with the words "no" and "longer" which, in this context, are both adverbs used to modify "subject to review[.]" When used in this manner, "long" is defined as "after or beyond a specified time[,]" such as in the definition's included example, "said it was no long*er* possible[.]" WEBSTER'S NEW COLLEGIATE DICTIONARY 672 (1980).

Turning to the next two words, the word "subject" is an adjective, and the word "to" is a function word used to indicate the result of an action or process. The applicable definition for "subject" in this context is "dependent upon or exposed to esp. as a prelude to finalization[,]" such as in the definition's included example, "the plan is subject to discussion[.]" *Id.* at 1150.

We next incorporate the definition for "review" that was provided by the State and is applicable in this context—"To examine (an action or determination), esp. in a higher court in order to correct possible errors." So incorporated, a person of ordinary intelligence would understand that an award for punitive damages that is "no longer subject to review" means that it is after or beyond the specified time period under which the award for punitive damages is dependent upon or exposed to examination by a higher court to correct possible errors.

Here, at the time that Respondents entered into the settlement agreement, it was not after or beyond the specified time period within which a petition for a writ of certiorari could have been filed with SCOTUS. It is within SCOTUS's purview, not the trial court or this court, to decide whether a timely petition is granted or denied. As such, any discussion of the merits of a petition, which could have been filed by either one of the Respondents, is speculative and, in any case, irrelevant. A timely petition would have, at the very least, been *exposed* to examination, therefore precluding the underlying claims judgment from qualifying as a "punitive damage final judgment" under section 537.675.1(4).

The State attempts to draw a distinction between, on one hand, SCOTUS's review of a petition for a writ of certiorari and, on the other hand, the actual trial court judgment that is the subject of that petition. This is a distinction without a difference, however, because *any* review of the petition for writ of certiorari necessarily includes *some* review of the trial court judgment that is the subject of that petition. The illogicality of the State's argument is illustrated when it is applied in a different context—an application for transfer to the Supreme Court of Missouri after opinion in this court as provided by Rule 83.04.

Under Rule 83.04, the Supreme Court of Missouri "may" order a case, after an opinion by this court, be transferred to it on three grounds: first, "the general interest or importance of a question involved in the case"; second, "for the purpose of reexamining existing law[;]" or third, "that the opinion filed is contrary to a previous decision of an appellate court of this state." Rule 83.04 (incorporating by reference the first and second reasons from Rule 83.02). A request for such transfer is made by application, which shall state the ground or grounds for transfer. Rule 83.05.

Thus, one step in obtaining Rule 83.04 transfer to the Supreme Court of Missouri—similar to seeking certiorari in SCOTUS—is a showing that such transfer is appropriate under one or more of the three enumerated grounds. Applying the State's argument in this context, "an award for punitive damages excluding interest" that met all of the procedural requirements for which an application for transfer was filed, including timeliness, and then subsequently denied by the Supreme Court of Missouri, would become "no longer subject to review" under section 537.675.1(4) on a date determined by the trial court's *post hoc* analysis as to whether one or more of the Rule 83.04 grounds alleged in the application for transfer were meritorious. No person of ordinary intelligence would reach this conclusion, nor would such a person conclude that the Supreme Court of Missouri's review of an application for transfer, which it then ultimately denies, does not qualify as "review" under section 537.674.1(4). The trial court has no authority to presuppose or second guess the Supreme Court of Missouri's determination as to whether Rule 83.04 grounds exist supporting its discretionary transfer and review of the case. As Respondents correctly observe, what matters is whether the application is made after or beyond the specified time period, i.e., the deadline, during which a case is exposed to examination.

Similarly, nothing in section 537.675 purports to give the trial court any authority to presuppose or second guess whether the basis asserted in a petition for a writ of certiorari purporting to support the discretionary review of the case by SCOTUS is meritorious. Rather, once such a petition is timely filed, that determination lies solely with SCOTUS and, whether granted without merit or denied even though meritorious, that decision is not subject to review or correction by any other court. The only factual determination under section 537.675.1(4) that the trial court can make about a petition for a writ of certiorari to SCOTUS is whether it was timely

9

filed. An award for punitive damages excluding interest, therefore, does not satisfy the section 537.675.1(4) definition of a "[p]unitive damage final judgment" until the time within which to file a petition for a writ of certiorari to SCOTUS expires without the filing of such a petition because that is the earliest point in which it is "no longer subject to review by courts . . . of the United States[.]"

In sum, we are not persuaded by the State's labored interpretation of the subject-to-review phrase. Under that phrase's plain, ordinary, and unambiguous language, the underlying claims judgment, at the time of the settlement agreement, did not qualify as a "punitive damage final judgment" because the deadline to file a petition for a writ of certiorari with SCOTUS had not yet expired. Because the case between Respondents giving rise to the underlying claims judgment and the punitive damage award was resolved by a settlement agreement prior to a punitive damage final judgment, it is expressly exempt from the provisions of section 537.675 and, therefore, the State's purported lien thereunder. Section 537.675.3. The State's first point is denied.

Having determined that the meaning of the subject-to-review phrase is clear and *not* ambiguous, the State's second point, arguing in the alternative that it *is* ambiguous, is without merit and is also denied.

### Decision

The trial court's lien petition denial judgment is affirmed.


GARY W. LYNCH, P.J. – OPINION AUTHOR

JEFFREY W. BATES, C.J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS